# WALTER E. MILLER ET AL.

## vs.

## STATE OF MARYLAND.

*Criminal Law—Motion to Strike Out Judgment—Appeal— Misconduct of Jury.*

An appeal lies from the refusal of a motion to strike out a judgment, but not from the refusal of a motion for a new trial.
p. 382

The finding of the trial court on a motion to strike out a judgment should not be set aside unless the appellate court cannot escape the conviction, not only that the verdict may have been influenced by the matters complained of, but that it probably was so influenced. p. 382

On appeal from a refusal by the Supreme Bench of Baltimore City, by a vote of seven judges to three, to set aside a judgment of conviction because a juror was told by a detective that defendant had a bad record, *held* that the action of the Supreme Bench would not be reversed, under the circumstances, even though the Court of Appeals might have reached a different conclusion as to the effect of the communication to the juror upon the verdict. p. 382

*Decided December 10th, 1919.*

Appeal from the Criminal Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Eugene O'Dunne,* for the appellants.

*Ogle Marbury, Assistant Attorney General,* with whom were *Albert C. Ritchie, Attorney General,* and *Harry W. Nice, State's Attorney for Baltimore City,* on the brief, for the State (appellee).

ADKINS, J., delivered the opinion of the Court.

Walter E. Miller and Harry T. Norris, the appellants, were tried by a jury and convicted of robbery on March 6th, 1919. On the following day one of the counsel for traversers in a conversation was told by one of the jurors that during the progress of the trial he had gotten outside of the court room information about the bad record of Norris. On March 8th, 1919, a motion for a new trial was filed and also a motion in arrest of judgment, and among other reasons assigned was misconduct of the jury. This motion was heard by the Supreme Bench of Baltimore City April 30, 1919, all the jurors who sat in the case having been summoned as witnesses, and nine of them examined; another called to testify was returned *non est.* One of them, John G. Vineup, testified that Mr. Armstrong, one of the city detectives, told him outside of the court room during the progress of the trial that Norris had a pretty bad record. After the trial was over Armstrong told him more, but not during the trial. The conversation took place in the Court corridor. Armstrong was an old friend. No other member of the jury was present. Don't remember having told any of the other jurors about it, but might have done so. Armstrong was a witness in the case. Charles T. Baetjer testified that something was said in the jury room about Norris having a bad record, but this had no effect upon witness. Lewis M. Lambert heard one of the jurymen remark casually on the street that Norris had a bad record. Did not remember having heard it mentioned in the jury room. It made no impression on him; thinks Diegelman was the juror who mentioned it on the street. Valentine J. Diegelman testified that the first he heard of Norris' bad record was after the trial. Didn't tell Lambert during the trial because he didn't know it then; did not hear it mentioned in the jury room. Lambert later stated that Diegelman's recollection was correct.

Harry A. Echle heard nothing about the bad record until after the jury had reached their verdict in the jury room.

They had hardly reached the jury room before there was a unanimous decision of guilty. There was not a single objection. The jury could have returned to the Court room in three minutes if some of the jurors had not wished to smoke; and in the course of smoking and standing around the room somebody said, "I hear Norris has a bad record." That had no influence whatever because we had decided the men were guilty immediately. The other jurors who testified either did not hear of the bad record at all or not until after the verdict was agreed upon.

The Supreme Bench refused both the motion for a new trial and the motion in arrest of judgment by a vote of seven of the judges, including JUDGE HEUISLER, who was the presiding judge at the trial of the case. Three of the judges filed a dissenting opinion. The fact that a dissenting opinion was filed only emphasizes the serious and careful consideration given to the application by the Supreme Bench.

On May 8th, traversers were sentenced, and order of appeal filed. On May 26th, time for filing bill of exceptions was extended until and including July 15th. On July 2d, motion to strike out verdict and sentences was filed and overruled, and time extended for filing bills of exception to August 5th.

The reasons assigned for the motion to strike out were that traversers and each of them:

(1) Have been denied their constitutional right of trial by an impartial jury according to the law of the land.

(2) Have been denied due process of law.

(3) Have been denied their constitutional right of being confronted by the witnesses against them.

(4) Have been denied the right of cross-examination of witnesses whose testimony have been accepted in the proceedings.

(5) Have been convicted on unsworn testimony not given in open Court.

From the refusal of the motions by the Court below an appeal was entered.

It is difficult to see in any case which has been fully tried on its merits the difference between a motion to strike out a judgment and a motion for a new trial, except from the refusal to grant the former an appeal may be entertained, and not, in this State, from such refusal as to the latter.

. The reason for the rule in this jurisdiction denying appeals from orders refusing motions for new trials applies equally in cases of motions to strike out judgments after full trial. In the one case as much as in the other the trial Court is in a much better position to determine fairly the merit or want of merit in such applications than an appellate Court, in the nature of things, can be; and therefore the finding of the trial Court on such a motion should not be set aside, unless the appellate Court cannot escape the conviction, not only that the verdict *may have been influenced* by the matters complained of, but that it *probably was* so influenced.

The conduct of the detective in the case at bar was most reprehensible and deserved the sternest rebuke; but, tested by the rule which should govern in motions of this character, this is not a case where our judgment should be substituted for that of the trial Court, even if, in its situation, we might have reached a different conclusion.

The *Fountain case,* recently decided by this Court and referred to by counsel for appellants in his brief and oral argument, is not an authority for the position he takes in the present case. No such situation exists here as the record in that case discloses. The principle on which we base our decision is fully recognized in the *Fountain case.* It was held in that case that the trial should have been deferred because the conditions with which the Court below had to deal appeared to this Court to have rendered a fair trial at that time and place impracticable.

We prefer to rest our decision upon the reasons given above; but it is proper to call attention to the fact that the

motion to strike out the judgment was not made until after the expiration of the term. In these circumstances we do not think appellants have complied with the rule as to proof of fraud, deceit, surprise or mistake in entering the judgment.

There appear in the record several bills of exception to rulings on evidence. These were not urged either in appellants' brief or in oral argument. We do not find in them any reversible error.

*Order affirmed.*