HENRY McCLELLAND, ALIAS HERBERT M. ROTHERY,

*vs.*

STATE OF MARYLAND.

*Prosecution for Larceny—Evidence—Other Crimes—Joint Defendants—Separate Trials.*

On a prosecution for larceny of a brooch from a jewelry store, which defendant first entered under the pretext of bringing a ring to be repaired, it having been proved that defendant gave the brooch to a friend to be pawned for him, evidence that he stole other articles from the same store between the time of leaving the ring for repair and the larceny of the brooch, and that he gave them to the same friend to be pawned, was admissible as tending to prove that the larceny of the brooch was one of a connected series of crimes committed in the execution of a continuous scheme of theft.                    p. 535

While ordinarily proof of another larceny by the accused is not received to establish his guilt as to the larceny for which he is indicted, yet such evidence is admissible where it bears on the issues in the case on trial, as where it shows or tends to show intent, motive, guilty knowledge, or a common scheme, plan, or system.                    p. 536

On a prosecution for the larceny of jewelry, which the evidence tended to show was delivered by defendant to a friend for the purpose of pawning it under a fictitious name, *held* that, under the special circumstances, the admission of evidence that this friend frequently received from defendant other jewelry for the purpose of pawning it in the same manner, without any showing as to whence this jewelry was obtained, was not reversible error.                    p. 537

When of two persons jointly indicted, one submits his case for trial by the court and the other for trial by a jury, the court cannot properly, during the trial of the latter before the jury, hear testimony which is inadmissible against the latter, although it is admissible against the former.                    p. 538

When, on a trial before a jury, the court heard evidence which was not admissible as against the defendant then on trial, though it was admissible as against one jointly indicted with him, who had elected to be tried by the court, *held* that, although the court ruled that this testimony could not be considered as against the defendant then on trial and told the jury to disregard it, its admission was ground for reversal.                    p. 539

*Decided May 14th, 1921.*

Appeal from the Criminal Court of Baltimore City (BOND, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*David S. Kaufman* and *J. LeRoy Hopkins,* for the appellant.

*Alexander Armstrong, Attorney General,* with whom were *Lindsay C. Spencer, Assistant Attorney General,* and *Robert F. Leach, Jr., State's Attorney for Baltimore City,* on the brief, for the appellee.

URNER, J., delivered the opinion of the court.

There are one hundred and one bills of exceptions in this record, but they are mainly concerned with only two general questions of evidence. The appellant was indicted for the larceny of a diamond brooch. Upon his trial in the court below he was found guilty by the verdict of a jury and was sentenced to imprisonment for three years in the Maryland Penitentiary. Before the exceptions reserved at the trial are considered, the effect of the evidence to which no objection was made will be stated. The accused did not testify, and no evidence on his behalf was offered.

The brooch in question was stolen from the retail store of the A. H. Fetting Jewelry Manufacturing Company, on Liberty Street, in the City of Baltimore. It was in a tray of

jewelry which was shown to the appellant on June 12th, 1919, and when the tray was afterwards examined the brooch was found to be missing, although it had not been sold. On May 24th the appellant had brought a ring to the store to be repaired, and when he called there on June 12th he was informed that the ring would be ready for him on the next day. He did not return for it until the following March. Subsequently he was arrested, as were also his son and a young woman by the name of Miss Cook, and all were indicted jointly for the larceny. In an interview at police headquarters, Miss Cook stated in the presence of the appellant that on June 12th, 1919, after having come from New York to Baltimore with the appellant and his son in an automobile, she was left by them in the car on Fayette Street, and upon their return, after being absent for a considerable period of time, the appellant threw a small jewelry box into the car, and they afterwards went to New York, where she pawned for the appellant a brooch which she identified, from a drawing made by Mr. Fetting, as the one stolen from his company's store. By the appellant's direction, she said, the brooch was pawned by her under a fictitious name. After denying when arrested that he had given Miss Cook any jewelry to pawn, the appellant admitted, in view of her statement made in his presence, that what she had said was true. He offered to plead guilty if he "could get ten months," but he was told that he could be given no such assurance.

A number of the exceptions were taken to the admission of evidence tending to prove that the appellant stole other articles of jewelry from the store of the Fetting Company in the course of a series of visits there beginning May 24th, 1919, when he left the ring to be repaired, and ending on June 12th, when the larceny of the diamond brooch is alleged to have occurred. The proof introduced over these objections was to the effect that Miss Cook received from the appellant, and pawned under assumed names at his instance, other jewels stolen from the store during the period of his visits there, and that he admitted at police headquarters the truth of her

statement as to his having delivered those articles to her for the purpose she described. This evidence tended to prove that the larceny charged in the indictment was one of a connected series of crimes of that nature, committed by the appellant in the execution of a continuous scheme of theft, depending upon the opportunity provided by the transaction in reference to the repair of the ring, and characterized by the employment of an unvarying method and agency for the disposal of the stolen property. For the purpose of proving a common design or system, in pursuance of which the crime charged in the indictment was perpetrated, the evidence to which the group of exceptions under consideration referred was properly admitted. While ordinarily proof of another larceny by the accused is not received to establish his guilt as to the one for which he is indicted, yet such evidence is admissible "where it bears on the issues in the case on trial" as "where the evidence of such other offense shows or tends to show intent, motive, guilty knowledge, or a common scheme, plan, or system." 16 C. J. 603. In a note to the case of State v. Gillies, 43 L. R. A. (N. S.) 776, on the subject of "Evidence of other crimes in prosecutions for larceny," it is said: "Evidence of other offenses is sometimes admitted for the purpose of showing that the act charged was part of a series of similar offenses to show common purpose or system, or because the crime offered in evidence was part of a common scheme or plan to commit the larceny charged." The annotation refers to a number of cases in which that principle has been applied. Earlier decisions on the subject are collected in a note to People v. Molineux, 62 L. R. A. 231, et seq.

In Avery v. State, 121 Md. 231; Luery v. State, 116 Md. 289, and Lamb v. State, 66 Md. 287, the opinions cite the case of Rex v. Ellis, 6 B. & C. 145, in which a shopman was indicted for robbing his employer's money drawer of a certain sum of money on a stated day, and evidence that the accused had robbed the drawer at other times was admitted on the theory that the several felonies were connected and formed part of one entire transaction. This general princi-

ple is also recognized in *Meno* v. *State,* 117 Md. 435, and *Freud* v. *State,* 129 Md. 644.

The testimony of Miss Cook, and her statement proven to have been made in the appellant's presence, included general allusions to her frequent receipt of jewelry from him for the purpose of having it pawned. There was no proof as to how or where he had obtained any of the jewelry so disposed of other than that taken from the store of the Fetting Company. But in every instance, according to the testimony, the articles were pawned under a fictitious name by the appellant's direction. When asked at police headquarters what he had to say in regard to Miss Cook's statement that he had sent her numerous packages of jewelry with instructions to pawn them, but not in her right name, the appellant's reply was in effect an admission that the jewelry had been stolen. Objection was made to the proof of the general course of dealing to which the testimony thus excepted to referred. It was precisely the same devious course by which the appellant was shown to have disposed of the diamond brooch mentioned in the indictment, and the evidence tended to prove the existence of a definite and characteristic system under which his operations were conducted. Under the special circumstances we do not regard the admission of this proof as reversible error.

A more difficult question is presented by another class of exceptions. They relate to the admission of testimony as to certain statements made by the appellant's son, who had been jointly indicted with his father for the larceny of the brooch, and had submitted his case for trial by the court, their co-defendant, Miss Cook, having entered a plea of guilty of receiving stolen goods, under one of the counts of the indictment, and having become a witness for the State. The son bore the name of Rothery, while the father was known as McClelland. In the course of the trial of the latter before the jury, when a witness for the State was questioned as to the circumstances under which Rothery was arrested, and as to certain statements made by him out of the appellant's pres-

ence, the court stated its understanding that both of these defendants were being tried at the same time. Counsel for McClelland said that this was not their understanding, and insisted upon a severance. The court, however, decided to hear the proffered testimony in so far as it affected Rothery alone and did not refer to anything said or done by his father. The reason given by the trial judge for treating Rothery as being on trial by the court at the same time that McClelland was being tried before the jury was to obviate the necessity of "going over the same evidence twice." While adopting this procedure the court recognized the existence of a severance resulting from the fact that the two defendants had exercised their legal right to select different modes of trial. It was ruled that no statements attributed to Rothery which referred in any way to McClelland could be received, and after the witness, who was questioned on that subject, included in his testimony an account by Rothery of the movements of Mc-Clelland about the time of the larceny of which he was accused, the court declared that this could not be considered.

The simultaneous trial of the two defendants under the circumstances we have described did not result in any injury to Rothery, as he was acquitted by the trial judge. Whether it may have operated to McClelland's detriment, is the question to be determined. If it can reasonably be supposed to have had such an effect, the judgment must be reversed, for we are unable to approve of such a procedure. It too clearly involves the possibility of prejudice to the legitimate rights and interests of persons accused of crime to commend it for adoption as a proper method of dealing with issues of guilt or innocence under such conditions as those presented by this record.

The only portion of the testimony referring to Rothery which tended to prove the appellant's guilt of the crime charged was the recital by Detective Kahler of a statement made by Rothery that on June 12th, 1919, he and his father left Miss Cook in the automobile on Fayette Street and went around on Liberty Street, that he remained on the corner of

Liberty and Lexington Streets while his father went to the store of the Fetting Company, from which he later returned and they went back to the car, into which the appellant threw a small box, and that they proceeded to New York, where the brooch in question, which had been shown to him, was pawned for $150. This statement by Rothery was made out of his father's presence and was plainly inadmissible as affecting the issue as to his guilt which the jury was to decide. The jury were instructed to disregard that testimony as affecting the issue with which they were solely concerned, but in the view of the majority of this Court there was nevertheless a possible prejudice to the appellant, resulting from the concurrent trial of his son, which requires that the judgment appealed from should be reversed. The writer of this opinion, for reasons to be separately stated, is unable to concur in that view.

The other exceptions taken at the trial were not urged in the argument on appeal. They have been carefully examined, but we have found no reversible error in any of the rulings on account of which they were reserved.

The judgment will be reversed upon the ground above indicated.

*Judgment reversed and new trial awarded.*

---

Memorandum by URNER, J.:

I could not agree to the reversal of the judgment in this case, because I am satisfied from my examination of the record that the ends of justice do not require a retrial of the appellant for the crime of which he has been convicted.

The exceptions upon which reversible error is predicated refer to testimony which the trial court ruled in advance to be inadmissible and which the jury were positively directed to ignore after it was included in the statement of one of the

witnesses.　Apart from the objectionable testimony thus definitely excluded, there was nothing in the few and brief references to the appellant's son in the course of the trial, which, in my judgment, could have affected the father's case injuriously.

In view of the special circumstances of the case, described in the opinion, and of the action of the court below in eliminating the testimony to which the exceptions, on which a reversal is based, were directed, I have felt compelled to dissent from the conclusion that the conviction should be set aside and the case remanded for a new trial.