PATRICK MURPHY *v.* STATE OF MARYLAND.

[No. 52, October Term, 1944.]

*Decided December 8, 1944.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Webster C. Tall* and *John V. Hackett,* with whom was *George W. Della* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *A. Gwynn Bowie, State's Attorney for Prince George's County,* for the appellee.

BAILEY, J., delivered the opinion of the Court.

Patrick Murphy, the appellant, was indicted by the Grand Jury for Prince George's County on October 13, 1942. The indictment contained three counts, the first charging him with the rape of one Margaret Laignell, the second charging an assault with the intent to rape, and the third, assault and battery, all on the 19th day of April, 1942. On April 14, 1944, he was arraigned and entered a plea of not guilty. On April 28, 1944, he was tried before a jury and was found guilty on the first count of the indictment. On the same day he was sentenced by the Court to be hanged. On May 1, 1944, he filed a motion to strike out the judgment because of error happening between the verdict and the judgment, the alleged error being the consideration by the Court, after the verdict but before passing sentence, of past criminal records of the traverser in foreign jurisdictions, which records were not offered in evidence during the trial. Hearing was had on this motion on June 2, 1944, and on the same day it was overruled. On June 10, 1944, an appeal was entered by the traverser from the order overruling his motion to strike out the judgment and sentence.

While numerous exceptions were noted by the traverser to the rulings of the trial court on the admission of testimony and to the remarks of the court in passing sentence, the record contains no bills of exception. The traverser has not appealed from the judgment or sentence imposed on April 28, 1944, but only from the order entered on June 2, 1944, overruling his motion to strike out the judgment. Technically, we cannot consider the appeal in this case as an appeal from the judgment or sentence, for under the express language of section 1 of Rule 25 of this Court, governing appeals in criminal cases, all appeals must be taken within ten days from the date of the judgment or sentence. *Ivrey v. State*, 178 Md. 638, 15 A. 2d 910; *Feldstein v. State*, 181 Md. 662, 28 A. 2d 471.

Rulings on objections to evidence can be brought to this Court for review in no other way than by bills of exception duly signed by the trial court. *Lubinski v. State,* 180 Md. 1, 22 A. 2d 455. Nor does the fact that the record contains the transcript of testimony alter the situation. In the case of *Whittington v. State,* 173 Md. 387, 196 A. 314, 316, where the trial court refused to sign the bills of exception because of its opinion that it had no authority to do so at the time they were presented to it, this Court said: "Assuming that, under the circumstances, the defendant may have been entitled to have the evidence questions considered on appeal, if the bill of exceptions had been signed by the trial court when presented, we are restricted in our consideration of the case by the fact that, while the transcript of testimony is in the record, there is no certification of the bill of exceptions upon which the rulings on evidence may be reviewed." In the instant case no bills of exception embodying the rulings of the trial court on the evidence were ever prepared and presented to the trial court for its certification.

However, the attorneys for the traverser urge four rulings of the trial court on the admission of evidence during the trial before the jury as prejudicial error. The exceptions were duly taken during the trial. We have been referred to the case of *Bright v. State,* 183 Md. 308, 38 A. 2d 96, as authority for our power to review the trial court's rulings on the admissibility of testimony in this case. But in view of the peculiar circumstances under which the appeal was taken, withdrawn and taken again in the Bright case, we do not feel that any action taken by this Court therein can be considered as overruling the settled law of this State with respect to appeals in criminal cases. Nevertheless, the traverser in this case has been convicted of rape and sentenced to death. The gravity of the sentence induces us to disregard the imperfections of the record and to examine all rulings of the trial court which it is claimed were pre-

judicial to the traverser. *Coates v. State,* 180 Md. 502, 25 A. 2d 676; *Rose v. State,* 177 Md. 577, 10 A. 2d 617.

Miss Laignell testified that she was thirty-three years of age; that she was unmarried and lived at 2235 14th Street, S. E., Washington, D. C.; that she had worked as an attendant at St. Elizabeth's Hospital in Washington for fourteen years; that on April 19, 1942, her friend, Hazel Humphreys, who also worked at the hospital, called at her home with a sailor, Shuman, and the traverser, Murphy; that she had never seen Murphy before; that the four of them rode in the car which was driven by Murphy and then stopped at Mike Young's club; that about five minutes after they entered the club, she noticed that it was getting late; that she had to report to the hospital for work at 11:30 P. M.; that Murphy offered to take her back to the hospital, leaving their friends at the club where he was to rejoin them; that after leaving the club in Murphy's automobile, they were stopped by a member of the State Police for speeding; that she then learned that they were driving away from Washington instead of towards Washington; that upon reminding Murphy of this fact he stopped his car in the road and tried to make love to her; that she resisted and he had his hand on her throat; that in the struggle her pocketbook dropped to the floor of the car; that when she reached to pick it up she opened the door of the car and jumped out; that she was screaming and running when she stumbled and fell; that in falling she was knocked unconscious and that when she regained consciousness Murphy was on top of her in the act of sexual intercourse; that he started to choke her again and that she remembered nothing else until a Mr. Kirby came out of a nearby house when Murphy jumped up.

Dr. James I. Boyd, the deputy medical examiner of Prince George's County, examined Miss Laignell the night of the attack. He testified that her clothing was disarrayed, soiled and muddy; that she was emotionally upset; that there were bruises about her neck and scratches on her right cheek; that there were fragments

of dead grass in her hair and clothing; that she had a large abrasion on her right knee; that there was a large amount of blood and feces on her underclothing; that there were lacerations of the hymen and of the two side walls of the vagina; and that smears made from the vaginal contents showed the presence of spermatozoa.

Rufus King was living in the home of Mr. Kirby at the time of the assault. He testified that after he had gone to bed he heard a woman screaming; that he and his wife got up, dressed and went down to Mr. Kirby's room and "there was a lady sitting in there crying." He was then asked what occurred down in that room and he answered: "She was sitting there crying, and naturally, we tried to make her tell us what was the matter." He was then asked: "What was the remark or statement made by this woman?" The objection to this question was overruled and an exception noted. His answer was: "She said she had been raped." This is urged as the first prejudicial ruling of the trial court.

This evidence amounts to nothing more than the making of a complaint by the prosecuting witness that she had been raped, without stating any of the details of the assault. The admissibility of evidence of this character is fully discussed in *Wigmore on Evidence*, Third Edition, sections 1134 to 1140 inclusive, and it is there stated that the prosecution may always show that a complaint was in fact made. And in the case of *Blake v. State*, 157 Md. 75, 145 A. 185, this Court has held that on a prosecution for rape, not only may it be shown that the prosecutrix made a complaint shortly after the commission of the crime, but also the nature of the complaint may be stated for the purpose of showing the character of the act complained of. The applicability of the rule is not affected by the fact that the witness did not at the time know the name of the woman who was making the complaint nor the exact date of the making thereof. See also *Wharton's Criminal Evidence*, Eleventh Edition, sec. 520.

Kenneth Davis, who was fourteen years old at the time of the alleged assault, a son of Rufus Davis, testified as to finding a pocketbook on the front lawn of the Kirby home. His testimony then proceeded as follows:

"Q. When did you find it? A. It was the next morning.

"Q. Next morning after what? A. After the girl had been raped."

The following colloquy then took place between the Court, the attorneys and the witness:

"(Mr. Tall) After what? I did not hear that.

"(Mr. Bowie) Next morning after the girl was raped.

"(Mr. Tall) I object to that. How does he know that the girl was raped?

"(The witness) My mother told me.

"(Mr. Tall) That does not locate the time.

"(Mr. Bowie) Of course that is improper; I concede that. Let's scratch that out and don't talk about it.

"(Judge Marbury) The Court feels that it is permissible. We will overrule the motion to strike it out.

"Exception noted under Rule 18.

"(Mr. Bowie) It is admissible? Fine; all right. That is the sort of situation that does not occur frequently. I took Mr. Tall's objection to his conclusion that somebody was raped.

"(Judge Gray) He learned next morning that something unusual had transpired the night before, and that identifies the time and ties in the time of his finding the pocketbook."

It is urged on behalf of the traverser that the statement of witness "after the girl had been raped," based upon what had been told him by his mother, was hearsay evidence and that the admission thereof was prejudicial to the traverser. There is no doubt that the testimony is hearsay and that it would be clearly prejudicial if it were offered for the purpose of proving that the rape had occurred. But that was not the purpose for which it was offered. The witness was simply trying to fix the time when he found the pocketbook. He testi-

fied that "it was the next morning." When asked "next morning after what?" his reply was "after the girl had been raped." It is not claimed that he saw the assault or that he heard the complaint of the prosecutrix the night before. He was called only for the purpose of testifying about the pocketbook which he found in the yard of the Kirby home. We think that the explanation made by Judge Gray, which we have quoted above, prevents the statement from prejudicing the traverser. The defense in this case was not that Miss Laignell had not been raped but was based entirely upon the identity of her assailant. There was nothing in the statement of the witness to connect the traverser with the assault. It merely asserted an uncontradicted fact in the case: that Miss Laignell had been raped. It is stated in *Wharton's Criminal Evidence,* Eleventh Edition, sec. 452, that "the admission of hearsay does not constitute reversible error where the statements are immaterial, harmless, and in no way connect the accused with the crime."

In continuing his testimony, the witness, Kenneth Davis, stated that he opened the pocketbook to see if it was the property of anyone living in the Kirby home and found in it a social security card, containing a name that he did not recognize. He was then asked to give the name that was on the social security card found in the pocketbook. This question was objected to, and the action of the trial court in overruling the objection is urged as the third prejudicial error. The answer of the witness was that the name was "Patrick Murphy". There can be no doubt about both the relevancy and the admissibility of this testimony. While it is true that the pocketbook and its contents were not admitted in evidence because the State was unable to show that, when it was placed in the hands of the police, it was in the same condition as when found by the witness, this fact does not prevent the witness, who found the pocketbook, from testifying as to its contents when found by him. The trial court was correct in refusing to admit the pocketbook and its contents in evidence under the circum-

stances shown by the record. *State v. B. & O. R. R. Co.,* 117 Md. 280, 83 A. 166; *Blake v. State,* supra. And it was likewise correct in allowing the witness to testify as to its contents at the time he found it. His testimony relative thereto was founded upon his personal knowledge of what he discovered upon his examination of the pocketbook at the time it was picked up by him at the scene of the assault. Such testimony was both relevant and material. And its admissibility was not affected by the fact that the pocketbook and its contents were inadmissible because of the inability of the State to show that, at the time of the trial, they were in the same condition as they were when found by the witness.

The fourth exception to the evidence, which is urged as prejudicial error, was taken during the direct examination of Irvin J. Higer, a member of the Maryland State Police. He testified that on the night of April 19, 1942, he was patrolling from T. B. Junction to the District line, that at about eleven o'clock he stopped a man named Patrick Murphy for the illegal use of his spotlight and that at the time Murphy was accompanied by a woman. The traverser moved that all of this testimony be stricken from the record but the motion was overruled by the trial court. While the officer testified that Murphy was taken before the magistrate, Cox, in Oxon Hill, there is no evidence that he was convicted or even tried for the traffic violation. The evidence was not offered for the purpose of showing his conviction but for the purpose of corroborating the testimony of Miss Laignell as to the movements of Murphy and herself in Murphy's automobile after leaving Mike Young's club and immediately prior to the assault. It did not violate the rule relating to the admissibility of evidence of unconnected and unrelated crimes, infra, but was clearly admissible as tending to prove that the traverser's movements on the night of the assault had been correctly stated by the prosecutrix.

In the course of her examination, Miss Laignell identified the traverser, who was seated among the spectators

and jurors in the Court room, as her assailant. He was also identified by the State Policeman, Higer. At the conclusion of the State's case the traverser did not take the stand and no witnesses were called in his behalf.

This leaves for our consideration and review the action of the trial court in overruling the motion to strike out the judgment or sentence. The record contains the following papers pertaining to the criminal record of the traverser: (1) Certified copy of judgment in the Criminal Court of Record, of Dade County, Florida, showing the conviction of Patrick Murphy on March 15, 1939, of unlawful carnal intercourse with an unmarried female minor of previous chaste· character under the age of eighteen years, and the suspension of sentence thereon; (2) authenticated copy from the docket of Harry L. Parris, Trial Justice for Fairfax County, Virginia, showing that Patrick J. Murphy was on August 7, 1941, placed on peace bond of $200 for one year on complaint of one Charlotte Murphy, who charged him with assault; (3) authenticated copy from the docket of said Parris showing the arrest of Pat Murphy on September 4, 1941, on the charge of assaulting Charlotte Murphy, and the dismissal of the warrant at the request of the complainant; (4) record of the Federal Bureau of Investigation dated March 10, 1944, giving the record of FBI number 129172 from July 29, 1925, to June 1, 1942, wherein the subject appears under the following names: Stevin Russell Gates, Stephen R. Gates, Stephen Russell Gates, Russell Gates, Steven Gates, Patrick S. Murphy, Patrick Murphy, Patrick D. Murphy and Pat Murphy, and wherein the crimes charged include check frauds, larceny, carnal abuse, unlawful intercourse and assault; (5) certified copy of docket entries in the Circuit Court for Prince George's County, Maryland, showing the conviction of Pat Murphy on November 6, 1940, of assault and battery and the suspension of a two years' sentence in the Maryland House of Correction.

We assume that these are the records which were presented to the Court after the jury had rendered its ver-

dict and before the Court had passed its sentence, the use of which by the Court for the purpose of determining its sentence in this case was objected to by the traverser and forms the basis for his motion to strike out the judgment or sentence. But they are not embodied in any bill of exception nor is there in the record any authentication thereof by the trial court. However, the record was approved by the State's Attorney, and, in reviewing the action of the trial court in refusing to strike out the judgment, we may consider these papers in the record as upon an agreed statement of facts. This manner of presenting cases on appeal in the matter of motions to strike out judgments and similar motions has been approved by this Court in *Fick v. Towers*, 152 Md. 335, 136 A. 648, and in numerous cases there cited. And we feel that it was to questions of this character that Chief Judge Bond was referring in *Lee v. State*, 163 Md. 56, 161 A. 284, when he indicated that certain rulings of the trial court in a criminal case could be brought up for review without being embodied in a bill of exception, even though they involved the consideration of facts extrinsic of the record and not apparent on the face of the record itself.

By Section 554, of Article 27, Annotated Code of Maryland 1939, it is provided that every person convicted of the crime of rape shall, at the discretion of the Court, suffer death, or be sentenced to confinement in the Penitentiary for the period of his natural life, or undergo a confinement in the Penitentiary for not less than eighteen months nor more than twenty-one years. In this case the verdict of the jury was "Guilty on first count of indictment." The verdict made no mention of the second and third counts of the indictment, charging an assault with intent to rape and assault and battery, respectively. But this verdict is sufficient. In *Stevens v. State*, 66 Md. 202, 7 A. 254, where an indictment contained two counts, the first charging the commission of rape and the second charging an assault with intent to commit rape, and the jury found the traverser "guilty of the charge in the

first count," without passing upon the second count, the verdict was held to be sufficient, as the minor offense was merged in the greater. *Manly v. State,* 7 Md. 135, 151.

The rule is well settled that where the court must determine the punishment to be imposed, either on the finding of the jury or on a plea of guilty, it is proper for the court to hear evidence, by affidavit or otherwise, in aggravation or mitigation of punishment. *People v. Bork,* 96 N. Y. 188; *Cason v. State,* 160 Tenn. 267, 23 S. W. 2d 665; 15 Am. Jur. page 167, sec. 519. In hearing evidence in aggravation or mitigation of punishment, the court may hear such evidence as it deems necessary and proper. In the case of *People v. Popescue,* 345 Ill. 142, 177 N. E. 739, 77 A. L. R. 1199, it was held that it was proper for the trial judge, after a plea of guilty to a charge of murder, to hear evidence of other crimes before exercising his statutory discretion in fixing the decree of punishment. While our courts have consistently held that evidence of unconnected and unrelated crimes which do not show knowledge, motive, intent, a common scheme, or identification, is inadmissible against a defendant in a criminal case as tending to show that he committed the crime whereof he stands indicted in such case (*McClelland v. State,* 138 Md. 533, 536, 114 A. 584; *Dobbs v. State,* 148 Md. 34, 129 A. 275; *Jones v. State,* 182 Md. 653, 35 A. 2d 916), we have been referred to no authority in this State, nor have we been able to find any, which holds that the Court, after the verdict of the jury and before passing sentence, may not inquire into the past record of the traverser and receive evidence showing his prior convictions. The case of *Heyward v. State,* 161 Md. 685, 158 A. 897, is not in point. In that case the traverser had been convicted by the jury for participation in a lottery business. Before passing sentence, the trial judge required the traverser and one Gorman, who had been convicted of a similar offense, to be sworn. He then questioned them about the circumstances surrounding their activities and the duration and extent of

them. It was suggested by the Court that if they gave the grand jury the information in their possession concerning the activities of the lottery business in Baltimore, truthfully, fully and fairly, that portion of their sentence pertaining to confinement in jail might be suspended. The information sought by the Court had no bearing upon the sentence to be imposed in the case then before him. It was in fact an attempt to secure evidence upon which to prosecute other persons engaged in the lottery business in Baltimore City. It was for an ulterior purpose, as stated by Chief Judge Bond, in a separate opinion, at page 697 of 161 Md., at page 901 of 158 A., "not within the purposes of the proceeding before the court, or those of the judicial function."

The general rule is stated in *Wigmore on Evidence,* 3rd Edition, Vol. 1, sec. 4, page 25, as follows: "When the judge proceeds to fix a sentence, in a criminal case, after plea of guilty or verdict of guilty, his inquiry is not limited by the rules applicable to jury trial, in considering circumstances that should affect mitigation or aggravation of the penalty. This question has usually arisen where former crimes may be considered in aggravating the penalty."

The application of the rule may well work to the advantage of the traverser. Before passing sentence upon any person convicted of crime, the judge should know something of the life, family, occupation and record of the person about to be sentenced. This is particularly true when the statute provides such dissimilar penalties as does Section 544, of Article 27, Annotated Code of Maryland, 1939. One of the most natural inquiries is whether he has ever been convicted of the same or similar offense. If he has no prior record the Court may be more lenient than it would have been had his record showed prior convictions.

There are many decisions in other States which hold that, where the court has discretion in fixing the punishment, it may consider the moral character of the accused, and such other evidence as it may deem necessary,

as a guide in determining the punishment to be imposed. A case in point is *Tracey v. State,* 46 Neb. 361, 64 N. W. 1069, 1070, where it was insisted that the trial judge erred in asking the traverser how many times he had already served in the state penitentiary. In passing upon the question the Court said: "The obvious intent of the statute in fixing the punishment for the crime of robbery at imprisonment from three to fifteen years was to invest the trial court with discretion to grade the punishment within the limits of the statute according to the enormity of the offense * * * perhaps to consider the age, the mental condition, and the previous good character of the person convicted."

In the case of *State v. Wise,* 32 Or. 280, 50 P. 800, 801, the Court said: "The extent of the punishment, within the limits of the statute, was within the discretion of the trial judge, and the fact that he may have considered, in aggravation thereof another charge against the defendant does not invalidate the sentence." And, in the case of *State v. Reeder,* 79 S. C. 139, 60 S. E. 434, where the judge permitted two affidavits, tending greatly to aggravate the crime of manslaughter, for which the defendant was convicted, to be read when the prisoner was called for sentence, the court held that it was not error to admit the affidavits, stating that by statute the trial judge was given discretion in imposing sentence and that he should use any reasonable means by which his mind could be enlightened. And, again, in the case of *Tractenberg v. United States,* 53 App. D. C. 396, 293 F. 476, 480, the court used this language, in holding that the trial court did not err in considering the defendant's record of prior conviction: "Here the court did no more than inform itself as to the previous record of the defendant, not for the purpose of retrying any issue before the jury, but for the purpose of performing one of its own functions, namely, the imposition of sentence." And, finally, in the case of *Myers v. People,* 65 Colo. 450, 177 P. 145, 146, it was said: "There is nothing in the record showing an abuse of discretion in fixing the punishment; and,

even if the court in the exercise of its discretion took into consideration the evidence which tended to show that this was not the defendant's only offense, this would not render the judgment illegal. * * * Such circumstances surrounding the defendant, if within the knowledge of the court in any way, may properly be taken into consideration in the exercise of discretion within the statute in determining the measure of punishment that should be imposed."

It is not contended by the traverser that the records considered by the trial court are false or in any manner inaccurate. One of his counsel, in his statement to the Court, after the verdict and before the sentence, admitted that he had been convicted in Florida of carnal knowledge of a girl under eighteen years of age, and the traverser himself stated to the Court, when asked if there was anything that he wished to say before sentence was passed, that "for one thing, under the condition of my record, knowing what would be brought up against me, I was unable to take the stand," and "just as I said, due to my record, I was not able to take the stand; I did not want that brought out; I thought maybe I might have a chance in that way." But it is urged that the records were not properly authenticated. It is true that the record from Dade County, Florida, is not authenticated in accordance with the Act of Congress, 28 U. S. C. A. Sec. 687, but it is certified by the Clerk of the Court, with the seal of the Court affixed thereto. We feel that this is a sufficient verification of its authenticity, and that so verified it was proper for the Court to receive it for the purpose for which it was used in this case. It is stated in the record that there was attached to the records of the trial justice of Fairfax County, Virginia, a "triple certificate". This must mean that they were duly authenticated as provided by the Act of Congress, supra. The record from the Federal Bureau of Investigation is not certified in any manner, but it shows upon its face that it is based upon fingerprints and this Court must

take judicial notice of the fact that the use of finger-prints is an infallible means of identification.

In this case the trial court had a serious duty to perform and Section 544, of Article 27, Code, 1939, invested it with a wide discretion in determining the sentence to be imposed. We do not find that there has been any abuse of its discretion. The sentence imposed by it was within the limits of the statute, and, therefore of undeniable legality. And the sentence was imposed by the only tribunal which by law has the right to determine the penalty. *Duker v. State,* 162 Md. 546, 160 A. 279. An appeal always lies to this Court from an order overruling a motion to strike out a sentence or judgment. *Dutton v. State,* 123 Md. 373, 91 A. 417; *Miller v. State,* 135 Md. 379, 109 A. 104; *Duker v. State,* supra. But in this case we find no sufficient ground to interfere with the order of the trial court.

Finding no reversible error in the record, it follows that both the judgment of the trial court and its order overruling the motion to strike out the judgment must be affirmed.

*Judgment and order affirmed, with costs.*
HENDERSON, J., concurs in the result.