## CLAUDE DODSON v. STATE.

No. A-4862.    Opinion Filed April 23, 1925.
(235 Pac. 268.)

(Syllabus.)

1.    **Indictment and Information—State's Right to Rely on Any Specific Act of Intercourse Within Three Years Previous to Prosecution for Stautory Rape.** Where an information charging statutory rape alleged the crime to have been committed "on or about the 30th day of November, 1918," the state is not required to prove said crime as committed on' the date alleged, but may rely upon any specific act of sexual intercourse committed within three years previous to the date of the commencement of the action.

2.    **Rape—"Of Previous Chaste and Virtuous Character" Defined.** The phrase "of previous chaste and virtuous character," as used in the statute (section 1834, C. S. 1921), means in law as in morals a female who has never voluntarily indulged, out of wedlock, in sexual intercourse.

3.    **Same—Necessary Allegation and Proof as to Previous Chaste Character of Female.** In a prosecution for statutory rape, where the previous chastity of the female is an essential element of the offense as defined by the statute, it cannot be said that the law presumes that the female was not of chaste character when the act was committed, although such chaste character must be alleged, and the burden is on the state to prove beyond a reasonable doubt that she was of previous chaste and virtuous character.

4.    **Trial—Election Between Repeated Offenses Constituting Statutory Rape—Duty of Court on Motion to Require Election.** It is

the established practice to require the state to elect, and when the defendant fails to request election by the state between repeated offenses, as shown by the evidence, it is proper for the court, upon its own motion, to require the state to elect.

5. **Evidence—Judicial Notice of Boundaries of State and Counties, and Location of Cities and Towns.** The courts take judicial notice of the boundaries of the state and counties therein, and the geographical location of cities and towns within the state.

6. **Same—Fact that Point 12 Miles Northwest from County Seat is Within County Judicially Noticed.** The boundaries of Greer county, as well as the fact that a point 12 miles northwest from Mangum, the county seat, is within Greer county may be judicially noticed.

7. **Trial—Rape—Credibility of Prosecutrix for Jury.** Credibility of of the prosecutrix in a prosecution for statutory rape is for the jury.

8. **Rape—Evidence Sustaining Conviction for Statutory Rape.** In a prosecution for statutory rape, evidence held to warrant a conviction.

Appeal from District Court, Greer County; T. P. Clay, Judge.

Claude Dodson was convicted of rape in the second degree, and he appeals. Affirmed.

A. R. Garrett, for plaintiff in error.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for the State.

DOYLE, J. The plaintiff in error, Claude Dodson, was charged with the crime of rape, alleged to have been committed on or about the 30th day of November, 1918, by having sexual intercourse with one Gertrude Keesee, a female over the age of 16 years and under the age of 18 years, of previous chaste and virtuous character, and not the wife of the defendant.

On the trial the jury returned a verdict finding him guilty of rape in the second degree and fixing his punishment at confinement in the penitentiary for a term of five

years. He has appealed from the judgment rendered on the verdict.

It is assigned as error that the verdict is not sustained by the evidence. The material and undisputed facts in the case as disclosed by the record are substantially as follows:

The prosecutrix was born on the 4th day of March, 1901; she lived with her parents on a farm about 12 miles northwest of Mangum; that she gave birth to a child at the home of her parents, August 28, 1919. In June, 1919, the defendant went to Texas and was gone for about two years.

The prosecutrix testified that the defendant, Claude Dodson, had kept company with her for about three years, and they were engaged to be married; that he first had sexual intercourse with her going home from church at Wesley Chapel; that she could not remember how many times after that they had sexual intercourse; that she never had sexual intercourse with any other man; that the defendant was the first person she told about being in a family way and after he left the country she told the defendant's sister.

She was then asked the question and answered as follows:

"Q. State in what county and state he had intercourse? A. State of Oklahoma, Greer county."

Martha Keesee, an elder sister, testified that the defendant visited their home nearly every Sunday, always in a buggy; that they would have singing on Sunday nights and parties during the week, and the defendant always took her sister, Gertrude, to these parties.

The prosecutrix, recalled, testified that the first intercourse the defendant had with her was in March, 1918; that the last time the defendant had intercourse with her

was along about the last of November, 1918; that in June, 1919, was the last time she saw the defendant for two years.

William Keesee, father of Gertrude, testified that she was born March 4, 1901; that the defendant began to visit his daughter Gertrude in the early part of the year 1918; that her child, a baby girl, was born on the 28th day of August, 1919; that he did not see the defendant after June, 1919, for about two years.

When the state rested, the court required the state to elect upon which one of the acts of sexual intercourse related by the prosecutrix it would rely on for a conviction. The state elected March, 1918.

For the defense, Chas. A. Francis testified that the defendant was his first cousin; that in 1918 he lived about a mile from Mr. Keesee's home, and his daughter, Miss Gertrude, visited his wife some time in July, 1918, and that evening while he was lying down on the bed out in the yard Miss Gertrude came and laid down on the bed with him and fumbled over him, and he felt of her legs; then he had to get up and get away from her to keep down trouble; that Miss Gertrude stayed there that night with his wife.

Bill Francis testified that he was a first cousin of the defendant; that he was acquainted with Miss Gertrude Keesee, and took her home from a dance at Lewis Allen's, about three quarters of a mile, some time in the latter part of the winter of 1918, and on the way hugged her and kissed her and talked with her about having intercourse and she refused and said to wait until some other time.

The defendant did not testify. The record shows that the sufficiency of the evidence to sustain a conviction was questioned for the first time in the defendant's motion for a new trial.

It is urged by counsel for the defendant that the evidence is insufficient to show that the prosecutrix was under

the age of 18 in the month of March, 1918. This argument is predicated upon the alleged contradictions and inconsistencies of the testimony of the prosecutrix.

There was some confusion of dates in the testimony of the prosecutrix as to her age and the date as to when the first act occurred. However, mistakes in dates are easily made, and in cases of this character the prosecutrix is usually under great embarrassment and confusion of mind. The testimony of her father that she was born on March 4, 1901, was positive and without any qualification whatever.

It goes without saying that the credibility of the witnesses was for the jury. It is also urged that there was no proof of venue. To use the language of counsel in his brief, "There is not one word in that evidence as to what county or state it occurred in * * * or that the act of sexual intercourse complained of by the prosecutrix as having occurred in March, 1918, occurred in Greer county, Okla. "

The prosecutrix testified that the defendant had intercourse with her in Greer county. It was shown by the testimony of all the witnesses that the parties concerned lived about 12 miles northwest of Mangum, which is almost the geographic center of Greer county.

Courts of the state take judicial notice of the boundaries of the state and the counties of the state, and also the geographical location of cities and towns within the state. Goben v. State, 20 Okla. Cr. 220, 201 P. 812.

In State v. Skibiski, 245 Mo. 459, 150 S. W. 1038, it was held that a place eight miles from a named county seat was judicially known to be within the county. And see Forehand v. State, 53 Ark. 46, 13 S. W. 728.

It is also urged that the evidence is insufficient to show that the prosecutrix was a female of previous chaste and virtuous character.

While it cannot be said that the law presumes girls over 16 and under 18 years of age are not of chaste character, however, on a trial for statutory rape on a girl over 16 and under 18 years of age, the previous chaste character of the prosecutrix is a material element of the offense, and must be alleged and the burden is on the state to prove beyond a reasonable doubt that she was of previous chaste character. Davis v. State, 17 Okla. Cr. 604, 191 P. 1044.

"A female of previous chaste character" is one who has not had sexual intercourse, unlawfully, out of wedlock, knowingly and voluntarily. Castleberry v. State, 10 Okla. Cr. 504, 139 P. 132.

The proof that the prosecutrix was a female of previous chaste character need not be made by evidence directly upon the point other than the testimony of the prosecutrix, but may be shown prima facie by presumptions from other facts.

The prosecutrix testified that she had not had sexual intercourse with any other man, and the evidence shows that she had always resided with her parents and went in such society as the neighborhood afforded. This was competent evidence that she was of previous chaste character. While the witness Francis testified that the prosecutrix had tried to seduce him, and that he emulated the example of Joseph of old and escaped from her, however, we are inclined to think that neither his testimony, nor that of his brother, scarcely rises to the dignity of evidence.

Complaint is made that the court erred in requiring an election by the state. It appears from the evidence that the defendant's offense was repeated a number of times between March and November in the year 1918. The defendant was entitled to require an election by the state, but he made no such request at the close of the evidence for the state. Thereupon the court did, upon its own motion, require the state to elect. It is the established practice under

our statute to require the state to elect. Montour v. **State,** 11 Okla. Cr. 376, 145 P. 811; Taylor v. State, 14 Okla. Cr. 400, 171 P. 739.

Complaint is made of several instructions, but no authority is cited in support of the criticisms made.

We find that the instructions fully and fairly covered the law of the case.

In conclusion, we simply add that we see no reason to doubt that this conviction was warranted by the evidence and, finding no error prejudicial to the defendant, the judgment of conviction is affirmed.

BESSEY, P. J., and EDWARDS, J., concur.