## ELMER STOUT v. STATE.

No. A-6324. Opinion Filed Sept. 15, 1928.
(270 Pac. 90.)

P. H. Moroney and Ben Smith, for plaintiff in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Blaine county on a charge of robbery with firearms, and was sentenced to serve a term of 25 years in the state penitentiary.

Briefly stated, the record discloses that on June 30, 1925, a bank at Greenfield, Blaine county, was robbed. Three men in an automobile appeared there, and by a display of firearms took $2,200.50 from the bank. Four persons were in the bank at the time—M. C. Kelly, the cashier; J. W. Baker, the teller; C. P. Busch and Ben Dix-

on, customers. When the robbery was completed, Kelly was put in the car with the robbers and was taken some 10 miles in the country and there released. The identity of two of the robbers was not questioned. One of them was Dad Stewart who was killed in a robbery of a bank at Navina, Okla., some six weeks later. Another of the robbers was Edgar Stout, a brother of defendant, who confessed his connection with the robbery. The identity of the third participant is-contested. The theory of the state is that defendant here was the third member of the party. Defendant has interposed the defense of alibi, and contends that a man by the name of Ralph Jones was the other member of the party committing the robbery.

The first objection urged is that the evidence is insufficient to sustain the judgment; that the identification of defendant as a participant in the crime is not shown by that degree of proof required in criminal cases. His counsel admit that the circumstances shown place defendant at a serious disadvantage, particularly the evidence of the kinship between defendant and Edgar Stout, an admitted participant, with the further fact that the other participants, Stewart and Edgar Stout, rendezvoused at defendant's residence in Tulsa county, both before and after the robbery. The defense offered a number of witnesses in support of his claim of alibi; also by an extremely close examination his counsel sought to weaken the testimony of the state's witnesses as to the identification of defendant. The testimony identifying defendant as a party to the robbery is as follows:

Ben Dixon, a negro patron in the bank at the time, said defendant looked like the third man; that he could not find any one who would favor him more, but could not absolutely say it was him.

The witness Busch, a farmer, in the lobby of the bank when the robbers entered, said:

"* * * Q.  Have you seen that fellow that had the gun on you since?  A. Yes.

"Q.  Where?  A. The first place I saw him was in Oklahoma City.

"Q.  How long since?  A. I think possibly it was along in September. '

"Q.  Where did you see him afterwards?  A. Here in Watonga.

"Q.  Is he here in this courtroom to-day?  A. To the best of my knowledge, that is the man there, Elmer Stout. * * *"

On cross-examination he stated that his identification was to the best of his knowledge; that the defendant there looked like him.

The witness Baker testified:

"* * * Q.  Can you give a description of the man that stood there at the window, that you say you saw, and that you say had a gun; can you give a description of him?  A.  Well, I didn't see so much of him, only his face, just from the waist up.

"Q.  Tell the jury about his face.  A. Well, I don't know whether I can describe him that way or not, he had a, oh, I don't know—maybe two or three days beard on his face, or something like that.

"Q.  Do you know the color of his hair or his— A.  Oh, I couldn't tell; he had a cap on.

"Q.  Would you be able to recognize the man if you saw him?  A. Yes.

"Q.  Is he in the courtroom?  A. Yes.

"Q.  Where? A. Sitting on the other side of the table. (Witness points out the defendant, Elmer Stout) * * *"

On cross-examination he was asked if it was possible for him to be mistaken; he answered: "I might be, but I don't feel that way."

The witness Kelly testified:

"* * * Q. What did the defendant do there, if anything? A. He was standing there by that window with a gun right through the window, where it would cover every one of those men at any time. * * *

"Q. You could see this defendant all the time? A. Oh, yes; whenever I would look around that way.

"Q. How long were you kept in that position? A. I wouldn't say over three minutes. probably not over two minutes; they worked pretty fast. * * *

"Q. What was this defendant doing while Stewart and this other Stout was putting these people in the vault? A. Standing right there at the window.

"Q. Did he ever leave that window? A. No, sir. * * *

"Q. Did you observe the defendant's clothing at that time? A. Yes.

"Q. Tell the jury what he had on. A. He had on a blue work shirt that looked like it had been washed, and he had on a pair of khaki pants and a belt.

"Q. And I believe you say that he had a cap? A. Yes.

"Q. Any disguise on his face in any way A. No, sir.

"Q. Have you recognized him here in the court at this time? A. Yes.

"Q. Point him out to the jury. A. The boy sitting right behind Mr. Smith there (indicating the defendant). * * *

"Q. Is there any question in your mind as to this defendant being the man? A. No. * * *"

In the case of Simpson v. State, 40 Okla. Cr. 58, 266 P. 783, in discussing the identity of a defendant as the person who committed a robbery, this court held:

"The testimony of a witness as to the identity of a person is in effect a matter of opinion. It is competent for a witness to testify that he saw defendant after his arrest, and recognized him as the one whom he saw commit the offense, although the witness may not be able to state any peculiarity or characteristic on which his identification is based."

In the case of Brannon v. State, 39 Okla. Cr. 207, 264 P. 835, in which the identity of a defendant as a participant in a robbery was in question, it was held:

"The evidence of a witness in a criminal case as to the identification of defendant at or near the scene of the crime need not be absolutely certain, in order to render it competent. That such testimony is not positive goes to its weight rather than to its competency."

As just stated, there is evidence here that defendant was one of the three persons participating in the robbery charged. This is contradicted by the evidence of alibi offered by defendant. The weight and credibility of this evidence was for the jury. Applying the well-settled rule, where there is evidence, although conflicting, from which the jury may reasonably and logically find the guilt of a defendant, this court will not invade the province of the jury and weigh the evidence. We see no reason to disturb the judgment for insufficiency of the evidence.

It is next argued that the court erred in his instructions, and in refusing certain instructions requested by defendant. Defendant requested an instruction upon the law of alibi. The requested instruction is argumentative, and contains other elements than alibi and is not correct in form. The court upon this subject gave the following:

"You are instructed that the defendant has interposed in this case, as one of his defenses, what is known in law as an alibi, that is, that the defendant was at an-

other and different place at the time of the commission of the crime  The law is that such a defense is proper and legitimate, and that the jury should consider all of the evidence bearing on this point, whether introduced by the state or the defendant, and that if after a careful consideration of all the evidence in the case the jury entertain any reasonable doubt as to whether the defendant was in such other place when the crime was committed, then and in that event the jury should give the defendant the benefit of such doubt and acquit him."

In the case of Thompson v. State, 6 Okla. Cr. 50, 117 P. 216, it is stated that an instruction in this form is correct. The law is, and the instruction should be, that, if the jury has a reasonable doubt whether defendant was at the place of the commission of the crime, they should give him the benefit of the doubt and acquit. The instruction is more favorable than the law warrants, in that the jury are told that if they have a reasonable doubt whether defendant was at the other place—that is, the place mentioned in the evidence of alibi—he should be given the benefit of the doubt and acquitted.

Complaint is also made that counsel for the state was guilty of misconduct in the argument to the jury. This objection first appears in the record in the motion for new trial. No objection was interposed to the argument at the time made, nor was any request made that same be taken by the court reporter, nor was any motion made to exclude it. This court, in a long line of decisions, has held that in the trial of a criminal case, where improper argument is made, objection should be interposed and a request made to have the same taken in shorthand, and to exclude the same from the jury. When the matter is not brought to the attention of the trial court in this manner, and an opportunity thereby given the court to rule on the objection, it is not properly raised for action by this court. Quitman v. State,

35 Okla. Cr. 245, 250 P. 441; Howard v. State, 39 Okla. Cr. 336, 265 P. 149.

Some brief argument is made on some other assignments of error. All of these have had attention. None of them are of sufficient importance to require special discussion. Upon the entire record we are convinced that defendant had a fair trial, the issues were fairly submitted, and no error substantially prejudicial to the rights of defendant is made to appear.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.