Lewis C. CONWAY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12506.

Criminal Court of Appeals of Oklahoma.

Jan. 8, 1958.

Howard F. Heffron, Gerald Spencer, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Lewis C. Conway, hereinafter referred to as the defendant, was charged by information in the Court of Common Pleas of Oklahoma County with the crime of operating a motor vehicle while under the influence of intoxicating liquor. He was tried before a jury, found guilty and his punishment assessed at 30 days in the county jail and to pay a fine in the amount of $250. The defendant appeals said case to this court and for reversal sets forth two assignments of error.

1. That the verdict of the jury was contrary to the law and the evidence.

2. Misconduct of the County Attorney which influenced the jury and substantially prejudiced the rights of the defendant.

Under defendant's first assignment of error he comments exclusively upon the contention that venue was never established by the state. After a careful review of the record we concede that there is no direct or positive evidence as to venue, but in view of previous holdings announced by this court, we must conclude that the evidence in its most liberal construction is sufficient to comply with the rule. This court, in numerous cases, has held that venue need not be proven beyond a reasonable doubt, but may be proven by circumstantial evidence. It was announced in Evinger v. State, 57 Okl.Cr. 63, 45 P.2d 552, 553, that:

> "The proper practice is for the state to prove venue by direct and positive evidence, yet the essential test is whether or not venue has in some way been proven. Venue may be established by circumstantial evidence."

Also see Kilpatrick v. State, 90 Okl.Cr. 276, 213 P.2d 584; McCollock v: State, 45 Okl. Cr. 442, 283 P. 1026.

The testimony of the arresting officers is as follows:

"Q. How long have you been in the service of the State? A. Fourteen years.

"Q. What is your rank? A. Trooper.

"Q. What is the area that you travel? What is your territory? A. What we call the Midwest City Area, or the Southeast part of the county.

"Q. Would that include Southeast 29th street east? A. Yes, sir.

"Q. On the night of December 15, 1956, at about the hour of 8:15 p. m. were you on duty, sir? A. Yes, sir.

"Q. Who was your partner at that time, if any? A. Trooper Maxwell.

"Q. That is Mr. Maxwell sitting in the court room here today? A. Yes, sir.

"Q. At about that hour where were you and Mr. Maxwell located? A. About eight and a half miles east of the city limits of Oklahoma City, on Southeast 29th street.

"Q. And you were, of course, in your patrol car? A. Yes, sir.

"Q. What were you doing? A. We were sitting parked on the north side of the road.

"Q. Of Southeast 29th street? A. Yes, sir."

Leo G. Maxwell testified as follows:

"Q. How long have you been a member of the patrol? A. About seven years.

"Q. Where are you assigned at the present time? A. Southeast Oklahoma County, Midwest City area.

"Q. Mr. Maxwell, were you assigned to that area on December 15, 1956? A. Yes, sir.

"Q. Where was your patrol car parked with relation to the street? A.

At a point called Cherry Hill. It is about eleven and a half miles east of Oklahoma City, on the north side of the road, on the shoulder."

In the case of Dodson v. State, 30 Okl. Cr. 135, 235 P. 268, 269, the court said:

"Courts of the state take judicial notice of the boundaries of the state and the counties of the state, and also geographical location of cities and towns within the state."

It is well to note that the officers testified they were parked at a point known as Cherry Hill, eleven and a half miles east of Oklahoma City on SE 29th, also that as a trooper, he was assigned to the Midwest City area or the SE part of the county. Witness also testified that he took after defendant and stopped him within ½ mile. (CM 58).

In the case at bar the testimony reveals that defendant drove his vehicle from 'Rosie's Tavern', located ¾ mile east of a corner, eleven miles east of Oklahoma City on State Highway No. 3, which is a continuation of SE 29th Street, Oklahoma City and that he drove on said highway some ¾ of a mile to the corner where he would have turned off of said highway to his home. (CM 69). His testimony was as follows:

"A. I was at Rosie's Tavern, one quarter of a mile east of the eleven mile corner east of Oklahoma City on State Highway 3.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Three and a quarter mile east of Tinker Field, and where is your home with reference to Tinker Field? A. My home is four miles east of Tinker Field on State Highway 3, and three-quarters of a mile south of State Highway 3."

██ Though the best method would have been to produce positive or direct testimony as to venue, but the testimony revealed in said case that it comes squarely within the Dodson case, supra, and the court could take judicial knowledge of the boundaries of Oklahoma County extend-

**422**

ing beyond 11 or 12 miles east of Oklahoma City. Also see Goben v. State, 20 Okl.Cr. 220, 201 P. 812. Even though the testimony as to venue was purely circumstantial, it was sufficient to nullify defendant's contention of error.

▆▆ Defendant further contends misconduct occurred on the part of the county attorney. It is not clear as to what the defendant bases this second assignment of error upon. We assume, however, that he has reference to the remarks appearing on page 96 of the casemade, as follows:

"Thereupon, after the jury had retired to their jury room to deliberate upon their verdict, and in the absence of the Court, the following proceedings were had and record made herein, to-wit:

"Mr. Heffron: Comes now the defendant and objects to the argument of counsel on behalf of the State concerning the assurance and guaranty of the results of a drunkometer test as conclusively proving the defendant intoxicated. Also objects to the county attorney asserting his accquaintance-ship and friendship with one of the jurors, Mr. Kamp, for a period of thirty years and having said juror vouch for his truthfulness from the jury box.

"Show the objection overruled and exceptions allowed.

"Mr. Gregory: Let the record show further that the County Attorney desires for the record to show that the closing argument as made by Mr. Ryland Keys, with respect to the results of the drunkometer test, was the final closing argument for the State and was made in response to the argument by defendant's attorney, Mr. Gerald Spencer, in his closing argument, wherein he stated in effect that the reason the results of the drunko-meter test were not produced was that they would have shown that the defendant was not drunk."

▆ This creates an unusual situation in that the above proceedings evidently took place after the jury had retired to deliberate and during the absence of the court. The objection was made, overruled, and exceptions taken by defendant's attorney outside the presence of the judge and jury. This could not be said to be a timely objection. When improper remarks are made it is the duty of defendant's counsel to immediately impose an objection and a request made to instruct the jury that the remarks are improper and not to be considered by them. See Bilton v. Territoy, 1 Okl.Cr. 566, 99 P. 163; Stout v. State, 41 Okl.Cr. 42, 270 P. 90; Bruster v. State, 40 Okl.Cr. 25, 266 P. 486. However, in the case at bar no objection was made by defendant during argument, but after the jury had retired and in the absence of the trial judge. If the objection had been presented to the trial judge and he had been given an opportunity to pass upon the same, this court, in that event, would have been justified in considering the court's ruling upon appeal had the objection been overruled and exception saved. The record is completely silent as to whether or not the objection was ever called to the attention of the trial judge.

Affirmed.

BRETT, P. J., and POWELL, J., concur.