### GEORGE W. BENNETT v. STATE.

No. A-4377.   Opinion Filed Feb. 9, 1924.
(222 Pac. 705.)

(Syllabus.)

1.    **Continuance—Discretion of Court—Application on Ground of Absent Witness Properly Denied.** Applications for a continuance are addressed to the discretion of the trial judge. An application for a continuance based on the absence of a witness who has not been subpoenaed, and whose residence and whereabouts are un-

known to the applicant, and which discloses no facts as a basis for the belief expressed by applicant that the attendance of such witness may be had at the next term of court, properly denied.

2. **Appeal and Error—Affirmance—Conviction on Circumstantial Evidence.** A conviction based on circumstantial evidence and approved by the trial judge will not be set aside on appeal where there is a reasonable basis in the evidence upon which the jury could conclude, as reasonable men, that the defendant was guilty of the crime charged.

Appeal from District Court, Pawnee County; Redmond S. Cole, Judge.

George W. Bennett was convicted of the larceny of an automobile, sentenced to five years in the state penitentiary, and he appeals. Affirmed.

This is a prosecution by information filed in the district court of Pawnee county October 11, 1921, charging plaintiff in error, George W. Bennett (hereinafter referred to as defendant), with the crime of larceny of an automobile from one Prentice E. Rowe, alleged to have occurred in Pawnee county on the 26th day of April, 1921. The cause was tried to a jury in January, 1922, with the result that the defendant was found guilty and punishment fixed as above stated. Motion for a new trial was filed, heard, and overruled, and an appeal prayed to this court. Petition in error and case-made were filed in this court on June 14, 1922. Succinctly stated, the facts are about as follows:

On April 26, 1921, Mr. Prentice E. Rowe, togther with Mr. Jones, Mr. Reese, Mr. Thompson, and Mr. Grimsley, all residents of the city of Pawnee, Okla., drove into the town of Quay, Okla., in Mr. Rowe's Studebaker Six touring car, for the purpose of attending a meeting of the Odd Fellows fraternal order. They had with them in the car some regalia, banners, standards, collars, etc., intended to be used in

certain of the order's ceremonies. The meeting was held in the schoolhouse in the town of Quay, located on Main street of said town, on the north side thereof, and in the eastern part of the town. These parties arrived in town shortly before dinner time, ate their dinner, and then repaired to the schoolhouse to attend the meeting. On the way to the schoolhouse Mr. Grimsley saw the defendant George W. Bennett, who was also a resident of the city of Pawnee at that time, and talked with him for some time before entering the schoolhouse.

Mr. Rowe was on the program to make an address that afternoon, and before entering the schoolhouse he had parked his car near the southeast corner of the schoolhouse. The defendant Bennett was seen near the schoolhouse that afternoon and near the car just about the time Mr. Rowe was to make his address or was making his address. About 15 or 20 minutes later Mr. Rowe received information that his car was missing, and together with Mr. Green and Mr. Grimsley they went outside of the schoolhouse and looked for the car, and also looked for Bennett, and neither the car nor Bennett could be found. Some time between the hours of 2 and 3 that afternoon Mr. Kerns, a traveling salesman for a wholesale grocery house located in the town of Quay, was traveling in a car along the public highway between the town of Quay and the town of Jennings, and passed this defendant, who was at that time in a large touring car stopped at the side of the road at a point about one-half mile from a hill on said road known as the Blue Hill. Mr. Kerns, thinking that the large car had probably broken down, slowed down to offer assistance, but, upon noticing that there was no apparent need of his services, drove on. When Mr. Kerns got nearly to the top of Blue Hill his Ford car stalled and blocked the road. A few minutes later the defendant drove up

behind him, stopping his car near the foot of the hill, and walked up to where Kerns' car was stalled and assisted Kerns by pushing his car until he reached the top of the hill Mr. Kerns stopped at the top of the hill, and the defendant then drove rapidly past him in a large Studebaker touring car. Later on, when Mr. Kerns learned that Mr. Rowe had lost his car, he informed the sheriff of Pawnee county of the foregoing incidents.

After the loss of the car Mr. Rowe and the sheriff also notified officers of the neighboring towns, as well as those of the city of Oklahoma City and Tulsa, by telephone and telegraph, of the loss of the car and offered a reward for its recovery.

On the morning following the loss of the car Mr. G. R. Coles, a farmer, who had attended the Odd Fellows meeting at Quay, and had stayed all night in the town of Quay after the meeting, was returning to his home on the road traveled by Mr. Kerns the day before and by the party who was driving the large Studebaker Six touring car, and at a point not far distant from where Kerns had first seen the large car on the side of the road Mr. Coles found, about 30 or 40 feet from the road, the Odd Fellows' paraphernalia that had been left in Mr. Rowe's car when he parked the same near the schoolhouse the day before. A man's track led from the place where the car had evidently been stopped to the place where the Odd Fellows' paraphernalia was found, the ground being soft from a rain which had occurred a few days before. The tracks were those of a medium sized man, shoes probably between a 5 and a 7 number, and were evidently new shoes with rubber heels on them.

On the evening of the next day after the car was lost, Green, who had made the trip from Pawnee to Quay in Mr. Rowe's car, was en route via the Frisco Railway to the city

of Claremore, Okla. At Tulsa the defendant got on the train and took a seat just opposite to Mr. Green, and facing him. Green recognized the defendant, and talked with him until the train arrived at Claremore, where Green left the train. During the course of the conversation the defendant told Green that he was on his way to Detroit, Mich., and was going to attend some races to be held in Canada. When the conductor collected the tickets the defendant took out a new bill folder when he handed the conductor his ticket. Green then noticed that the defendant was carrying a considerable amount of money. Green also noticed that the defendant had on a new gray suit of clothes, and carried an expensive traveling bag. When Green alighted from the train at Claremore he immediately telephoned to the sheriff of Pawnee county. Immediately after receiving this information the sheriff then called the police headquarters in St. Louis, Mo., giving the officers there a description of the defendant, and telling them what train he would arrive on, and directing them to arrest him. The next morning the officers in St. Louis arrested the defendant in Union Station, at that city. When arrested the defendant had on his person between $350 and $400 in money, a ticket from St. Louis to Detroit, Mich., and he was carrying a new traveling bag. The sheriff of Pawnee county went to St. Louis and returned with the defendant to the city of Pawnee, where he was afterwards charged and tried for the offense. Mr. Rowe never recovered the stolen car.

The defendant, as a witness in his own behalf, admitted that he was in the town of Quay on the day the car was stolen; that he was present at the schoolhouse; that he left Quay on the afternoon of the day of the Odd Fellows' meeting; that he met Green in the city of Tulsa, and was with him on the Frisco train between Tulsa and Claremore, Okla.,

on his way to Detroit, Mich.; that he had on his person the amount of money that the state claimed was found thereon; and that he was carrying a new traveling bag which he bought in the city of Tulsa. He denied that he had stolen Mr. Rowe's automobile, but claimed that he had ridden from the town of Quay to the town of Jennings, Okla., with a stranger by the name of Anderson, whom he had met that day in the town of Quay, and whom he had overheard say that he was going to drive from the town of Quay to the town of Keystone, Okla., and who, upon request, permitted the defendant to ride with him to Jennings. The defendant further claims that he was in the town of Quay looking for work at his trade as an electrician; that he had no permanent employment at that time, and had not had any for some time, and had heard that there was to be a Delco lighting system installed at the town of Quay, and for that reason he was there; that he stayed in Quay during the night of April 25th, and on the morning of April 26th, after investigation, he concluded that it would not pay him to stay in Quay any longer, and he then determined to go to Detroit, Mich., where a friend of his had previously written to him that he could obtain permanent employment. Defendant never returned to his home in Pawnee to notify his relatives of his sudden determination to go to Detroit; neither did he get his trunk, which was at home, nor any of his wearing apparel and other belongings which one usually carries with him when leaving to make a permanent location at another place. Defendant further attempted to explain the possession of the large amount of money then upon his person by saying that it was money that he had saved from his work in various places as an electrician.

Further, it should be stated that, in addition to the foregoing facts and circumstances proved by the state, after the

defendant had been returned from St. Louis to Pawnee the witness Kerns visited him while confined in the county jail at Pawnee, and there positively identified the defendant as the person he had seen on the road between Quay and Jennings, on the day of the Odd Fellows' meeting, at Quay, driving a large Studebaker Six touring car.

David C. Lee, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). It is first contended that the trial court erred in overruling the defendant's motion and application for a continuance based on the absence of the witness A. R. Anderson. The motion for a continuance discloses that this alleged person, whether fictitious or not, was a person whom the defendant claims he rode with from the town of Quay to the town of Jennings on the day Mr. Rowe's automobile was stolen. The application shows that several days before the cause was called for trial the defendant had a subpoena issued for the witness Anderson and placed in the hands of the sheriff of Pawnee county, and the same was returned unserved, and the application also shows that the whereabouts of the said witness was unknown to the defendant; but defendant states that he believes the witness could be found if the case was continued for trial until the next term of court. In resisting this motion the state proved by the sheriff that he had made a diligent search for the said witness; that he inquired of numerous persons in the town of Keystone where the witness was supposed to have lived, and where he had been informed by the defendant that the witness lived, but that nobody in said town knew of anybody by that name; that the postmaster there said there was nobody there by that name, and long-time resi-

dents of the town also stated that there was nobody by that name living there. So far as the application on its face shows, there is no greater likelihood that the alleged witness Anderson would be available for attendance upon a trial of this case at any later term of the court. The application does not state any fact by which the court could be led to believe that the witness could be found at a later term of court. In his affidavit in support of the application the defendant merely states his conclusions or opinions and not the facts upon which those opinions are based. From the face of the application it does not appear what the present residence of the absent witness was. So far as the defendant knew, he could only inform the court that the witness was not where he thought he would be, and, further, in the opinion of the defendant, he thought he might be able to find him before the next term of the court. This was merely a surmise on the part of the defendant that did not entitle him to delay the trial. Under such circumstances there was no abuse of discretion in overruling the motion. Pugh v. State, 6 Okla. Cr. 578, 120 Pac. 296; Cantrell v. State, 15 Okla. Cr. 280, 176 Pac. 91.

The verdict is based upon circumstantial evidence, and the conviction was approved by the trial judge. A fair statement of the facts of the case appears as a preface to this opinion. We deem it unnecessary to enter into a lengthy dicussion of the circumstances which were, in the opinion of the jury and of the trial judge, and also of this court, amply sufficient to sustain this conviction. It was the province of the jury to determine whether the circumstances were incompatible with any reasonable hyothesis except the guilt of the defendant. The function of this court is limited to ascertaining whether there was a reasonable basis in the evidence upon which the jury could conclude, as reasonable men, that

the defendant was guilty of the crime charged. In our opinion the circumstances were such as to permit of no other reasonable inference than that of the guilt of the defendant. The judgment is affirmed.

BESSEY and DOYLE, JJ., concur.