## ROY BRANNON v. STATE.

No. A-6015. Opinion Filed March 3, 1928.
(264 Pac. 835.)

James A. Embry and Joe Brewster for plaintiff in error.

Geo. F. Short, Atty. Gen., and J. Berry King, Asst. Atty. Gen., for the State.

EDWARDS, J.  The plaintiff in error, hereinafter called defendant, was convicted in the district court of Lincoln county on a charge of robbery and was sentenced to serve a term of 5 years in the state penitentiary

On September 16, 1925, the Bank of Kendrick was robbed by two persons, who, with revolvers, held up the

two employees working in the bank and took about $1,600 in money. This took place between 1:30 and 2 o'clock in the afternoon. While the robbery was taking place, a Ford touring car was standing at the rear, near the sidewalk, with a man seated at the wheel. When the two who entered the bank came out, they went to this car and it was immediately driven away. The two men who entered the bank and took the money were indentified as Earl Bogus and Jewel Albert Bridges. It is the theory of the state that defendant was the man who was at the wheel and drove the car. The money taken was in currency except about $291 in coin. The coin was in a money sack or bag having the name of the bank on it. Madge Harris, a young woman who was employed in a store near the bank, passed along the sidewalk by the parked car about the time the two men came out of the side door of the bank. She saw the man sitting at the wheel of the car, and, while not positive, testified that to the best of her knowledge it was the defendant. Alva Hicks was dragging the road north of Kendrick soon after the bank was robbed. A Ford touring car answering in all particulars the description of the car parked near the bank, passed him going north at a high speed; it was compelled to slow down somewhat on account of the sandy condition of the road and because of a curve about the time it was even with him. He testified that, to the best of his knowledge and belief, defendant was the driver of this car. The evidence is not incompetent because not positive. A witness need not be absolutely certain in his testimony as to the identification of defendant, to render the testimony competent. That goes to the weight rather than the competency. 6 Ency. Ev. 932; People v. Young, 102 Cal. 411, 36 P. 770.

That night the defendant, Bogus, and Bridges were

arrested in the town of Yale at the house of Don Robinson. Robinson was not at home, and when the officers came to the place defendant, who is a cripple, was seated on the porch. Bridges was standing near by, and Bogus was found in the house under the bed. There was another person there, referred to as Fred Davis. he ran from the house and made his escape, exchanging shots with the officers in doing so. Where he ran across an adjoining lot an automatic pistol and a sack of the same description as the sack taken from the Kendrick bank, containing forty of fifty dollars in coin, was found the next morning. In the house three automatic shotguns loaded with shells of chilled shot, and also three Smith and Wesson revolvers, were found. $308 in currency was taken off the person of Bridges, and about $500 in currency was in the padding in the top of the crutch carried by defendant. The defense is an alibi. Defendant testified and introduced evidence tending to corroborate him that on the day of the robbery he was at Pawnee, about 55 miles from Kendrick, until about the time of the robbery; that he left there, went to Bristow and from there went to Yale; he reached Yale about 4 o'clock; that he had with him on the trip one Ketch Harmon; that he had business with Robinson and went to his place, and as he was not at home he left for some time and returned again; that Bogus, Bridges, and Davis came later; that he had no connection with them. Neither Robinson nor Harmon were called as witnesses.

It is argued that incompetent evidence was admitted for the state, prejudicial to his rights. That is directed to the search without a search warrant which led to the finding of the arms and ammunition in the Robinson house where defendant was arrested. As this house belonged to Robinson and was not the residence of defendant, he cannot be heard to complain of any search

of it, even if the search were unreasonable. The objection can be made only by one whose private rights have been invaded. Ratzell v. State, 27 Okla. Cr. 340, 228 P. 166; Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052; Hall v. State, 39 Okla. Cr.—, 264 P. 221.

It is also claimed that the search of the crutch of defendant and the finding of the money concealed therein is an invasion of his constitutional rights as an unreasonable search and seizure. When the officers first went to the house of Robinson, one of them at the time knew of the bank robbery; they arrested defendant, Bridges, and Bogus. The search of the crutch was not made until the following morning, a portion of the money had been recovered in the house, some of it on an adjoining lot, and it was believed by the officers that defendant, Bridges, and Bogus were connected with the robbery. An arrest without a warrant may be made by even a private person when a felony has in fact been committed and such person has reasonable cause to believe the person arrested to have committed it. Section 2477, Comp. St. 1921. When a person has been legally arrested, either by an officer or a private person, as an incident of such an arrest he may be searched and articles found in his possession which may be used in the commission of crime or connected with the offense, or which may be used as evidence against him or weapons or things which may assist the escape, may be seized. Davis v. State, 30 Okla. Cr. 61, 234 P. 787; Keith v. State, 30 Okla. Cr. 168, 235 P. 631.

The arrest of defendant under the circumstances shown was legal, the search of his person, and the crutch in his possession, were not in violation of any constitutional right, and the evidence obtained by such search so far as relevant is competent.

The statute under which defendant is prosecuted (chapter 44, Session Laws 1925) has as its maximum punishment the death penalty. In a capital case the defendant is entitled, under the terms of the Constitution, art. 2, § 20, to be served with a list of the witnesses to be used in chief two days before the trial. This list was not served. But in open court defendant's counsel, referring to the failure to furnish a list of the witnesses, said:

"We are not going to make an objection on the part of the defendant, Roy Brannon. We will waive the service of the list of witnesses and demand a severance and announce ready for trial. * * * *"

In the course of the trial the state indorsed the name of J. F. Alford as a witness on the information. If defendant had stood on his constitutional right to have a list of the witnesses served, we assume the list, if served, would have contained the name of this witness, for he had been served with subpoena and an affidavit requiring his attendance outside the county of his residence had been filed. This was a matter of record at the time the waiver was made, and the waiver must be construed to apply to this witness as well as the witnesses whose names were indorsed, for if a list of the witnesses had been served it would have been immaterial whether or not they were indorsed on the information. Defendant in his testimony admits the truth of the testimony of Alford. It is not prejudicial.

It is also argued that in the opening statement of the county attorney in which he failed to state the plea of the defendant is misconduct requiring a reversal. Sections 2687, 2822, Comp. St. 1921.

The reading of the information and statement of the plea is to apprise the jury of the charge and the issue made thereon. It is a formality to simplify the

proceeding. The omitting to state the plea where the trial is had without objection on this ground, and, where the court instructs the jury that the plea of not guilty puts in issue the allegations of the information, no prejudice can possibly result from the failure to state the plea. It is error without injury. Harris v. State, 14 Okla. Cr. 490, 173 P. 958. Gibson v. State, 27 Okla. Cr. 75, 224 P. 736.

Some complaint is made that the court in the course of the trial questioned witnesses. This is not particularly stressed, but we have examined the record on this point and find that the court did ask some questions of witnesses. There was no extended examination, and the court did not persistently examine or cross-examine. The questions appear to be proper for the purpose of clearing up the testimony of the witness in a few instances. There is nothing to indicate that he took the role of a prosecutor, but throughout the trial he appears to have conducted himself in a manner entirely in keeping with his position.

Lastly, it is contended that the evidence is insufficient to sustain the verdict and judgment. Except for the evidence of the witness Madge Harris on the point of identification of defendant as the driver of the car parked near the bank, the evidence is circumstantial. It is well settled that, in order to support a verdict in a criminal case based upon circumstantial evidence, the circumstances relied upon, considered all together, must do more than render probable the guilt of an accused, but they must not only be consistent with the guilt of the accused, but inconsistent with any reasonable hypothesis other than his guilt, and sufficient to convince the jury beyond a reasonable doubt that the accused committed the crime for which he is on trial. Where, however, a conviction is based on circumstantial evidence and approved by the trial

judge, it will not be set aside on appeal if there is a reasonable basis in the evidence upon which the jury may conclude as reasonable men that the defendant is guilty of the crime charged. Bennett v. State, 26 Okla. Cr. 24, 222 P. 705.

While the evidence is conflicting, it is shown here that the defendant is in a measure identified by two witnesses as the driver of the car which was at the bank during the robbery and in which the robbers escaped. About five hours later he was arrested, under circumstances which seem conclusive that he knew of the robbery, in company with two men who are positively identified as the ones who entered and robbed the bank. There is the further circumstance that in the padding of his crutch about $500 in currency was found with no satisfactory explanation made. The circumstances are not numerous, but they are consistent with his guilt and inconsistent with any other reasonable hypothesis or conclusion.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.