WILLIAM A. BLAKE *v.* STATE OF MARYLAND.
[No. 3, January Term, 1929.]

*Decided March 21st, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Robert Barron* and *Lawrence S. Kaufman,* with whom was *David S. Kaufman* on the brief, for the appellant.

*John Hubner Rice, Assistant Attorney General,* and *William H. Maynard, Assistant State's Attorney for Baltimore City,* with whom were *Thomas H. Robinson, Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *Charles C. Di Paula, Deputy State's Attorney,* on the brief, for the State.

BOND, C. J., delivered the opinion of the Court.

The appellant, convicted by a jury of the crime of rape, and sentenced to death, brings before this court for review five questions or groups of questions presented by exceptions to action of the trial court.

The testimony was that a young woman, returning to her home, in the suburbs of Baltimore, about 7.30 o'clock on the morning of March 22nd, 1928, after working on a night shift at her place of employment, was seized by a young man loitering by a wooded section near her home, dragged into the woods, and forcibly ravished. The accused denied that he was present at the time and place specified, or that he knew anything of the crime. As in most of the reported cases, the

trial was almost wholly on the question of identity of the man. The testimony that the crime was committed by some man was not replied to. But, of course, as the commission of the crime by some man was not actually admitted, it was essential that it be proved in all its elements; and there was testimony covering these, given by the prosecuting witness herself, and by others.

A Mr. and Mrs. Hiss, living near the place of commission of the crime, testified that they were startled that morning, at approximately the time specified by the girl as that of the crime, by an insistent ringing of their door bell, and, finding at their door this young woman crying and in a hysterical condition, disheveled and somewhat muddy, admitted her and asked what was the matter. They said she told them of having been dragged into the woods and assaulted as just stated, and added, referring to a fresh discoloration and bruise on her neck, that that was where the man had tried to choke her, that he had choked her so hard that her tongue came out of her mouth, choked her so hard that she could not scream, until he relaxed pressure, and when he did so, she had screamed. Upon objection to this testimony as exceeding the limits of the mere fact of complaint, made a fact regularly admitted in these cases, the trial court ruled that no statements of the girl's then made concerning the identity of the man, the chief subject of dispute, could be repeated, but that other statements might be repeated. And this distinction has support in some decisions and in the summary of the law in 2 *Bishop, Criminal Procedure,* sec. 963, which says: "There is considerable room for strengthening her testimony in this way, especially where she exhibits marks of violence in connection with expressions indicative of her physical condition. But aside from and beyond this, it is competent to show by her, or by others, or both, that after the alleged rape, especially recently after, she complained of it to suitable persons, and exhibited, if such was the fact, marks of violence and other like indications, as confirmatory of her sworn testimony, * * *. Neither the particulars of her complaint nor the

name of the person whom she accused can, by the English and more prevalent American practice, thus be given." This court in *Parker v. State,* 67 Md. 329, decided that only the fact of complaint could be testified to, not the particulars. And see *Legore v. State,* 87 Md. 735. In these cases, too, the question of identity of the man was the main subject of controversy; and they may leave some room for question as to the scope of a mere complaint, as distinguished from the particulars, if anything more than an answer yes or no is to be permitted to a question whether a complaint was made.

The cases cited by Bishop for the statement just quoted do not clearly support him, if he means that the girl's explanation of marks of violence may be repeated. The greater number of the American courts which have excluded particulars of the complaint appear to have taken the view that they could permit only the answer yes or no to a question whether a complaint was made; and that was the English view until 1896, when it was decided that this distinction between the complaint and the particulars of it was based on a misreading of the old *nisi prius* case upon which it was founded (*Rex v. Clarke,* 2 Stark N. P. 241), and that it was an unreasonable one. *Reg. v. Lillyman* (1896), 2 Q. B. 167; *Russell, Crimes & Misdemeanors* (8th ed.), 903. It had often before been described as unreasonable. Parke, B. in *Reg. v. Walker,* 2 Moody & R. 212; *People v. Clemons,* 37 Hun. 580, 587. It has not been the practice in this state to restrict the testimony of a complaint to a mere yes or no answer. Some statement of the nature of the complaint has been regarded as admissible, at least for the purpose of showing the character of the act complained of, and we think this a proper application of the rule. And it seems clear that the line of distinction beyond that cannot be one rigidly fixed, because of the variations in cases and their details. In this case the details given added nothing to the character of the crime, but amounted rather to a specification of the force which made it a crime. And they did not bear on the question of identity of the man. The girl and several other witnesses testified in court to the same marks and the same causes. In our opinion, the pre-

vious statement of details objected to, even if beyond the strict limit of the rule, was not so material that its repetition by Mr. and Mrs. Hiss should be treated as vitiating the trial and requiring a second trial of the case. We hold, therefore, that no reversible error was committed in this respect.

A second group of exceptions presents a question of the admission of statements of a police officer who had been summoned at once to the scene of the crime, that there was a mark on the side of the girl's neck as if she had been grabbed by a hand, and that he knew from experience what the gripping strength of a man was, what impression it would bring, what results it would show afterwards, and what a grab of a hand would mean around any one's throat. A physician had previously testified, without objection, that the mark appeared to have been made by finger prints. The objection made to the police officer's testimony is that it amounted to an opinion by an expert witness on a question which the jury should have been allowed to decide for itself. But the jury could not see the mark and judge of its cause. And the evidence does not come within the ordinary category of expert opinion, but is rather that of a direct witness to the mark who had had experience with similar marks and was telling of the similarity. It would seem to be in the same category as the identification of such things as powder marks or odors by men who knew them. *Dabney v. State,* 113 Ala. 38; *State v. Buck,* 88 Kans. 114. This objection is not well taken.

Exceptions in a third group are to the admission of questions to a police officer called as a witness by the State, and later to the accused, on declarations of the prosecuting witness when she first saw the accused at the police station on the night after the commission of the crime. Objection was made on the ground that the repetition of those declarations constituted hearsay testimony, that it was not rendered admissible by the presence of the accused inasmuch as there was no admission by him in reply, and that his silence or denial was not material under the circumstances. On the direct examination of the prosecuting witness, she had testified that she had gone to the station to examine photographs and had found

one of a man resembling the accused, and while engaged in this she had seen the accused in the corridor with detectives and identified him, and on cross-examination denied that she had at this earlier identification been uncertain and made mistakes, and had identified photographs of men in prison or dead. And she was asked as to previous knowledge by her that the man was to be brought in, and as to preparatory descriptions given to her, and also as to opportunities to see the face of the man during the commission of the crime. Subsequent witnesses were then questioned by the State on this earlier identification at the police station, and three of them testified that the prosecuting witness did then identify the man without prompting, two of the witnesses, still without objection, described the examination of the photographs, and said the girl saw Blake in an adjoining room first, identified him at once, and speaking to him afterwards declared to him that he was the man who had assaulted her, and from whom she had begged and received her rosary. The last of these three witnesses had just stated that when Blake was brought before the girl she accused him of the crime, and he was then asked the question to which objection was made: What took place in detail when the man was taken in before the girl? And the question was next objected to during the State's cross-examination of Blake. He was asked to tell what the girl said to him when she saw him; and he replied that he could not say exactly what she said. This second question therefore brought no objectionable testimony, if the earlier question did. It has been questioned whether this evidence of the policeman should not be regarded as a reply to an attack on the ability of the prosecuting witness at the police station to make an identification of the accused with certainty, rather than as a reproduction of statements as proof of the facts then asserted. The view of the writer of the opinion is that such is the nature of the evidence. But a majority of the judges take the view that it was a reproduction of statements as proof of the facts asserted, and should have been excluded as hearsay testimony, and that its admission was likely to be injurious to the accused when admitted,

by being taken to imply an acquiescence or confession by the accused, which would be unjustified. The court holds therefore that there was error in the ruling here excepted to.

A fourth ruling to be reviewed is this: A coat, identified as belonging to the accused and as resembling the coat worn by the perpetrator of the crime, had been offered in evidence and exhibited to the jury at an early stage of the trial, and then held in the court room. According to the testimony, Blake was arrested at about 6 o'clock in the evening of the day of the crime, March 22nd, and the officers had procured the coat from his house at that time and taken it to the police station. And it appears from the record, too, that it was in the possession of the police thenceforth. The accused admitted that it was his coat, and that he had worn it on March 22nd, but denied that he had gone through any woods or bushes wearing it that morning. During his cross-examination by counsel for the State, the coat was again exhibited to the jury for their inspection of a particle or particles of weed, a burr or burrs, which had been noticed on the coat just before this. A newspaper reporter called attention to one and counsel then found another. One was so lightly attached that it dropped off during the inspection. The defense objected generally to this inspection of the particles, and excepted to the overruling of the objection. The trial court then permitted counsel for the defense to place two more witnesses on the stand for the purpose, as the court explained, of permitting argument that inasmuch as the coat had been in the possession of the police approximately two months and the particles had not been discovered by the police, they had been put on in court, as had been suggested in questions by counsel for the accused. The newspaper reporter and counsel for the State then testified that they merely discovered the particles on the coat. The objection made on appeal to the inspection allowed is that without preliminary testimony to eliminate the possibility that the particles had become attached to the coat subsequent to the day of the crime, their presence now had no tendency to prove that they had become attached from weeds or bushes

on that day, and hence was irrelevant and immaterial. *State v. Balto. & O. R. Co.*, 117 Md. 280, 284.

On this exception, a first question is whether, when an article or object has once been introduced in evidence without objection, an objection can be interposed later to the exhibition of such indications as the particle discovered attached to it. The coat had been introduced previously in connection with the identification of the man by the color and general appearance of his garments. That purpose clearly appears to have been the only one then in mind, although it was not so specified at the time of the original offer in evidence. The subsequent reference to the condition of the coat, or to the object attached to it, as an indication of contact with weeds or bushes, might be considered, we think, to be so far a new offer of evidence that the previous admission could not fairly be taken as having foreclosed all question of its relevancy or materialty. The objection could, therefore, be interposed, and this court has considered it upon the ground now urged, even though exactly that ground seems not to have been suggested at the trial. The conclusion of the court is that while there might be, from the facts that the coat had been taken into the custody of the police on the day of the crime, and kept in that custody since, some ground of inference that the contact with the weeds or bushes had occurred on or before the day of the crime, proper caution in the introduction of such evidence—which might well influence the decision of the jury to a considerable extent—requires that testimony tending to eliminate the possibility of attachment of the particles subsequent to the day of the arrest should be introduced as a preliminary. Although exactly this point was not made in the trial of this case, we think it should be met in a retrial.

The last exception was taken to remarks by the trial judge, at the imposition of sentence, on the commission of this crime by the accused even after the warning experience of a recent trial on a like charge, of which he had been acquitted. "It would certain seem," the court said, "that the mere ordeal of such a trial would, to say the least, burn into

your mind the serious consequences of this crime. As a matter of fact, apparently it had no effect upon you. Notwithstanding the trial, you became a prowler of lonely roads." And this consideration had weight with the court in coming to the conclusion that the crime of which the accused had been found guilty was of such an aggravated nature that the maximum penalty provided by the law was called for. The objection made is that a former charge of crime cannot be taken to aggravate a crime now charged. It was not taken into consideration in reaching the verdict of guilty of this crime, or, indeed, as aggravating this crime. The lack of the ordinary deterrence by that experience, and the realization it must have given the accused of the seriousness of the crime, was cited as an indication of the character of the man and his criminal tendency. The court was under the duty of determining which of the punishments provided by the law was called for, and it cited this indication as to the man and the crime as one of the facts which inclined it toward the punishment determined upon. None of the restrictions imposed by the law upon punishment were transgressed, and this court has no power to interfere with the trial court's judgment and discretion in the performance of its duty.

For the error pointed out in the third group of rulings excepted to, we must therefore reverse the judgment.

*Judgment reversed, and new trial awarded.*

---

PARKE, J., filed the following dissenting opinion:

There was no dispute that the prosecuting witness had been raped. The single important question for the jury was whether the accused was the criminal. The prosecuting witness identified the accused in court as her assailant, and testified that she had recognized him on the day of the crime in the station house. She was subjected to a cross-examination with the object of weakening the weight of her identification at the police station and in court. The questions

asked on cross-examination were whether she had not identified photographs of a dead man and of a prisoner as being those of the ravisher; whether the detectives had not described the accused to her, and had told her that he was about to be brought before her for identification. Her answers were in the negative; and the prosecution offered, without objection, the testimony of witnesses to the effect that the young girl was shown a number of photographs and had stated that several resembled the side face of her assailant but that none was a picture of the man; that the accused was not described to her, but that, while she was examining the photographs, the girl looked up and through the glass of a door opening into an adjoining room, which the prisoner had entered, and, seeing him, she exclaimed "Why, there is the man now"; and that, later, when she confronted Blake, she accused him of being the man, holding out her rosary and asking him if he did not remember having taken it from her and, upon her entreaty, had restored it to her. Blake denied that he was the man and first said he did not know what a rosary was, but later admitted that he did; and the evidence on the part of the State was that when she said he was the man Blake hung his head.

After this testimony had been given without objection, the prisoner took an exception to the admission of testimony of two other third parties who were present at his identification. A majority of the court regards this testimony as hearsay, but the writer of this dissent concurs in the conclusion expressed by Chief Judge Bond, who wrote the opinion, but who did not agree with the view of the majority on this point.

The testimony related to the identification of the accused by the prosecuting witness. The identification was the expression of the opinion of the witness, and it had much more evidential force shortly after the commission of the crime. An identification at the trial, when the witness is testifying, has not the same weight, since, by that time, the witness would have come, by force of intervening circumstances, to believe in the prisoner's identity. The best evidence of

identification is usually the first identification. The mere fact that the accusation was made face to face with the accused on the day of the crime does not make the testimony relevant, but an identification then made is relevant as establishing that act at a time when the identification had the most probative value. The fact that the girl had identified the accused as being the man was not disputed, but the defense was that her identification was a mistake. The circumstances of the original identification, and the acts and demeanor of the girl and the accused, would be of significance in ascertaining the weight to be given the identification. It was an important matter to know that in the afternoon of the day of the crime the prosecuting witness had immediately identified the accused to be the guilty party as soon as she laid her eyes upon him. The identification was a fact which could be testified to not only by the one who made it but also by those who saw the identification. The testimony of eye and ear witnesses is not corroboration but is as truly primary evidence of what occurred as is the girl's own evidence of what she did and said.

Although the decisions are not harmonious on this point, the view presented by this dissent is advocated by Wigmore, who has collected the cases and stated his conclusion in a convincing manner. 2 *Wigmore on Evidence* (2nd Ed.), sec. 1130; *Com. v. Rollins,* 242 Mass. 427.

The admissibility of the testimony of those who witnessed the identification is not affected by the number of persons who saw the act. The repetition of testimony as to the act of identification adds nothing to the weight of the identification. Of course, the prosecuting witness and the other witnesses should be confined to the act of identification; and the rule does not allow the introduction of statements by the prosecuting witness of the details of the crime, unless these, when considered in connection with a statement or conduct of an accused, should tend to establish circumstances showing a consciousness of guilt. *Freud v. State,* 129 Md. 636; *Underhill on Crim. Evidence,* (3rd Ed.) sec. 200 *et seq.;* 2 *Wharton's Crim. Evidence* (10th Ed.), sec. 938, p. 1802.

The prisoner seems to have been fairly and impartially tried, and his defense fully presented; and the mistrial arises from rulings which, in the writer's judgment, could not have been prejudicial, because the testimony, which has been held inadmissible, was cumulative, as similar, but stronger, testimony had been given without any objection on the part of the traverser. *Damm v. State,* 128 Md. 665. While there should be no relaxation in the enforcement of every rule making for the protection of the accused, yet, unless substantial injury resulted, even an erroneous ruling on the evidence should not render a new trial necessary.