(No. 25078.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES BARRY, Plaintiff in Error.

*Opinion filed April 19, 1939—Rehearing denied June 13, 1939.*

W. W. SMITH, and ALBERT E. BUCCIERE, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

A jury was waived and James Barry, also called James Martin, was convicted in the criminal court of Cook county of the crime of assault with intent to rob and sentenced to the penitentiary. He has sued out this writ of error. Although ten errors are assigned, his principal contention is that the evidence does not prove his guilt beyond a reasonable doubt.

Peter Jeselski was shot and killed in an unsuccessful attempt to rob Alex Winefield of $150 about 6:00 o'clock in the morning of November 28, 1936. Winefield operated a concession in the Grand Terrace Cafe at 3955 South Park

avenue in the city of Chicago. It was his custom to deposit his daily receipts in the Builders National Bank at the southwest corner of LaSalle street and Wacker Drive. The bank had a receptacle at a corner of its building, so that its customers could make deposits before banking hours. It gave its customers keys with which they could open the box and send their deposits down a chute. On the morning in question, Winefield was driven to the bank by Patrick J. Kelleher, a police officer, who was off duty. He parked his automobile near the curb on the west side of LaSalle street facing south. The car was at the crosswalk and Kelleher could see the box or receptacle only a few feet away. The driver's seat was slightly north of the building line on the south side of Wacker Drive. The street corner was well lighted. Winefield alighted from the car and went west about fifteen or twenty feet to the night depository which was located about three feet from the corner in the north wall of the bank building. While he was trying to open the box, Jeselski came up from the east and walked around to Winefield's right. At the point of a gun he ordered Winefield to drop the money. Kelleher shot Jeselski. Another man whom Kelleher identified as the defendant, escaped. This man had approached Kelleher while he was seated in his automobile. He was displaying a gun, and when he reached the door near the curb, Kelleher fired one shot at him. The officer then climbed through the door at his left and fired the shot which felled Jeselski. He fired another shot at defendant while he was running across Wacker Drive. Jeselski attempted to rise and was shot again. Defendant returned the fire, but Jeselski was the only one hurt. He died later at a hospital. He told Kelleher he met his accomplice at a tavern, but did not know his name. An address book was found on him bearing defendant's name. Kelleher went to the police station and picked out a picture of defendant who was arrested later the same morning in the apartment of his mother-in-law, where he and his wife were

in bed. He was taken to the detective bureau where Kelleher identified him. Defendant testified to an alibi, and attempted to prove that his brother, Edward, was with Jeselski in the attempted robbery. Both defendant and his brother were on parole from the reformatory at Pontiac, where they had been sent on convictions of larceny of automobiles. To overcome Kelleher's positive identification of defendant and his positive statement that Edward Barry was not on the southwest corner of LaSalle street and Wacker Drive on the morning of the attempted robbery, defendant called witnesses who testified that they had seen Jeselski and Edward Barry together shortly before the crime. Edward Barry testified that Pete Jeselski was with him on the morning of November 27, 1936, when his automobile was in a collision. He and Jeselski had been friends since childhood. He refused to answer questions concerning the whereabouts of himself and Jeselski on the morning of November 28. The court refused to call Edward Barry as its witness on the ground that no proper foundation had been laid. The defendant and Edward Barry stood side by side before the court for comparison. The court said: "The record will show that the young man on the witness stand [Edward Barry] has a black or dark sweater on, and the defendant has a gray coat, part of a gray suit; but to the court it appears that the shoulders of the defendant are considerably broader than the shoulders of the witness: otherwise the defendant is maybe an inch or so taller than the witness. * * * I don't know whether their hair is the same color; I think the hair of the defendant is a trifle longer." Edward Barry admitted owning a light fedora hat and a blue zipper sweater, such as were described by officer Kelleher, and defendant denied owning such hat and sweater. Walter Zielinski, manager of a tavern at 21 West Ohio street, testified that Edward Barry was with Pete Jeselski shortly after five o'clock on the morning of November 28, 1936. He had talked with defendant's trial

counsel shortly before he testified. He did not know the last name of either man. Monroe Morganthal, a newsboy, testified that he saw Edward Barry and Pete Jeselski in the tavern shortly before the attempted robbery.

On testimony substantially as set forth, the court found the defendant guilty and sentenced him to the penitentiary. Later, on defendant's motion to set aside the judgment, Edward Barry, who was in jail waiting to be sent back to the penitentiary for violation of his parole, testified that he was with Pete Jeselski on the morning of November 28, 1936, at the scene of the attempted robbery. However, he denied knowing Jeselski intended to commit robbery and denied that he was armed. He insisted that he was on his way down to a market to obtain a job. The court also heard the testimony of a waitress in the tavern in corroboration of other witnesses who had testified that Edward Barry and Pete Jeselski were in the tavern on the morning in question. The motion to vacate the judgment was overruled.

Counsel for defendant contend that the evidence does not show that he was guilty beyond a reasonable doubt. They point to the fact that the officers were unable to find a blue zipper sweater or a gun at defendant's place of residence, when they arrested him. They also point to the fact that defendant's brother admitted owning such a sweater while defendant denied owning one. They also insist that the People's testimony was considerably weakened by the contradiction between the testimony of Winefield and Kelleher. Winefield testified that he thought the other robber was shorter than the defendant. We do not regard any of these discrepancies as important. If defendant had disposed of the sweater and gun before he went home they could not be produced by the People. It would not matter who owned the blue zipper sweater. The witness Kelleher was in a much better position to see what happened than was Winefield, who admitted that he was very much excited by the shooting. Defendant approached to within three feet

of Kelleher while he was sitting in the car. He had a good opportunity to observe the defendant, and we are in no position to say that the trial court erred in believing him to the exclusion of defendant's witnesses. We think it pertinent to point out that Edward Barry refused to testify that he was present at the scene of the crime, until the judgment had been entered against his brother. The court was entitled to consider his lack of candor in judging his credibility and in refusing to believe his testimony. Even after his brother had been convicted, he did not admit his complicity in the crime, but explained his presence at the scene of the robbery by saying that he was on his way to look for a job. This would hardly square with his testimony that he had been out all night making a round of the taverns.

Complaint is made of the method used by Kelleher to identify the defendant. It is contended Kelleher should have selected defendant out of a group, instead of by himself. The manner of identification affects only the credibility of the witness (*People* v. *Crane*, 302 Ill. 217) but, in this case, Kelleher himself had picked out defendant's photograph before he identified him at the police station.

Plaintiff in error is in no position to complain of the failure of the court to call Edward Barry as a witness, so that his counsel might cross-examine him. On the motion to vacate the judgment Edward Barry testified fully concerning his whereabouts on the morning of the crime.

There is no merit to plaintiff in error's contention that he was prejudiced by the hostility of the assistant State's attorney. The record shows that but little friction existed between counsel in the trial.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*