## PROCTOR *v.* STATE

[No. 21, September Term, 1960.]

*Decided November 9, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leo William Dunn, Jr.,* for appellant.

*(Miss)  Mary  Arabian,  Assistant  Attorney  General,* with whom were *C.  Ferdinand  Sybert,  Attorney  General,  William L.  Kahler,  State's  Attorney,* and *Frank  P.  Flury,  Deputy State's  Attorney,* respectively, *of  Prince  George's  County,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, Proctor, was indicted along with two others, Swann and Carle, on charges of assault with a deadly weapon with intent to rob, of assault with intent to rob and simple assault and battery.  Each offense was charged in a separate count in the indictment and they were set forth in the order stated.  Proctor was found not guilty on the first count, but guilty on the second and was sentenced to ten years' imprisonment.  On this appeal he raises two questions growing out of an extrajudicial identification of himself.  He claims that testimony of a police officer as to an identification made by the victim of the assault, one Martin, was improperly admitted and calls for a reversal (a) because the circumstances of the examination were not such as to preclude all suspicion of unfairness and unreliability, and (b) because the party making the identification did not testify to it himself.  The State opposes both of these contentions and further contends that even if this evidence was erroneously admitted, there was no prejudicial error, since this testimony was not vital and there was ample other evidence to sustain the conviction.

One of Proctor's co-defendants, Carle, pleaded guilty and testified for the State.  The other, Swann, a brother-in-law of Carle, was tried with Proctor.  A motion for a directed verdict of not guilty was granted as to Swann at the conclusion of the State's case on the ground that the case against him rested entirely upon the uncorroborated testimony or statements of accomplices.  After Swann had thus been acquitted, he was called as a witness by Proctor.  Neither side has included his testimony in its appendix, and the jury does not appear to have believed his account of the events occurring on the night of the crime for which Proctor ,was convicted. Swann sought to establish an alibi.

The victim of the attack, Mr. Martin, testified that he was

at his gasoline filling station on the Indian Head Highway in Prince George's County six miles from the District of Columbia line on the night of November 15, 1959, that at about 11:10 P.M. he observed a car first parked near his service station and then cruising slowly by it, that he saw two men, whom he identified in court as Proctor and Carle coming up from the side (not along the driveway) towards the filling station, that he got a glimpse of them before they reached the Coca Cola machine, that at about that time he put his gun in his pocket, that the two men paused briefly at the Coca Cola machine and then entered the office where he (Martin) was then standing, that the two were walking one behind the other, that Proctor walked up right in front of Martin, that the other man (Carle) who was behind Proctor had a gun pointed at Martin's head and said, "This is a hold up." Martin and Carle both fired, Carle first. (Carle says Martin shot first.) Martin fired three shots and the robbers both started out of the door at the same time. Carle got out first. Proctor fell about ten or fifteen feet from the door, the other man helped him to get up and away, and they went down the driveway. Martin was wounded in the face. He thought at the time that he had hit the man who slumped to the floor, but on the stand said he didn't think so. Some of his testimony, however, tends to show that Martin did shoot the man who fell (and Carle's tends strongly to do so).

As his attackers went off, Martin called the police, and an ambulance was summoned. He was taken to Hadley Memorial Hospital, in Washington, where a bullet was removed from his cheek. He was released from that hospital after about an hour and was then taken by Sergeant Nalley, of the Prince George's County Police Department, to Casualty Hospital, also in Washington, where they arrived at about 12:45 A.M., November 16th. The purpose of this visit was to see if Martin could identify two suspects, who were there. One was Proctor, who had arrived at about 11:35 P.M., November 15th, and was being operated on for a gunshot wound. The other was Carle who had accompanied Proctor to the hospital.

Martin testified that at the Casualty Hospital, in speaking

to Sergeant Nalley, he said: "That man is exactly the same height and he is slender, he's got a mustache, and he looks like the man that was in my station." Martin admits that he did not identify him positively at that time. The Police Sergeant testified that Martin could not then identify either of the men (Proctor or Carle).

Sergeant Nalley, who testified after Mr. Martin, further testified that on November 24, 1959, he placed Proctor, who is a Negro, and twelve other Negroes whose appearances he could not remember, in the (magistrate's) courtroom at Hyattsville, that he then asked Martin to go into the courtroom and see if he could tell whether Proctor was there, and that Martin "went back and identified Proctor as being the man he had seen that night at the robbery." This testimony was objected to, and both of the appellant's contentions are based upon its admission.

Carle's testimony contained a full admission of his own part in the attempted robbery, and he testified to Proctor's active participation with him in the attempt. Carle's account of what occurred was substantially the same as Martin's. Carle's testimony also identified Swann as the driver of the car in which he and Proctor both arrived at and departed from Martin's filling station. His testimony against Proctor is corroborated in many material respects by Martin's testimony.

The evidence against Proctor as a whole, excluding, however, that relating to Martin's identification of him at the Hyattsville line-up, would be ample to sustain his conviction on the charge of attempted robbery. The case might, therefore, be decided on the ground that if there was any error, it was not prejudicial; but because of some possible doubt as to whether or not the testimony in question had any material bearing upon the jury's determination of the vital issue of identity, we shall not rest our decision on that ground.

We shall take up the appellant's contentions in the reverse order from that in which he has stated them, and will turn first to the admissibility of the police officer's testimony that Martin did make an extrajudicial identification of Proctor at Hyattsville. We may note at this point that Martin's tentative identification of Proctor at the Casualty Hospital,

to which he testified on direct examination, had been strongly attacked on cross-examination. (This was later followed up by cross-examination of Sergeant Nalley at the end of his testimony, when he stated that Martin could not identify either of the men at the hospital.)

The evidence under attack (assuming that the identification was made under proper circumstances) was admissible at least for the purpose of corroborating Martin's testimony with regard to his tentative identification of Proctor at the Casualty Hospital and his identification of Proctor at the trial. *Basoff v. State,* 208 Md. 643, 119 A. 2d 917; *Judy v. State,* 218 Md. 168, 146 A. 2d 29; *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433. None of those cases is precisely on all fours with the present case in every respect, but we think that the differences are not such as to prevent the operation of the rule. Thus, in *Basoff,* the testimony of a policewoman that the complaining witness had identified a photograph of the defendant was held admissible. Here the complaining witness identified the defendant himself. In *Judy,* the witness was permitted to testify with regard to his own identification of a photograph of the defendant. In *Bulluck,* a police officer was permitted to testify concerning an identification made by the complaining witness and previously testified to by that witness. There, it seems very probable that the accused, who was only eight feet away, heard the identification made. But, as Judge Hammond said for the Court, (219 Md. at 74) : "Even if the accused did not see or hear the identification, the testimony was clearly admissible. *Judy v. State,* 218 Md. 168, 172 *et seq.,* and cases cited. *Basoff v. State,* 208 Md. 643." The admissibility of an extrajudicial identification is carefully considered in Judge Horney's opinion for this Court in the *Judy* case, in which he notes the change made by *Basoff* in our rule adopted in *Blake v. State,* 157 Md. 75, 145 A. 185. The general subject is also discussed in a full note in 19 Md. L. Rev. 210. In *Blake,* Chief Judge Bond, though writing the opinion of the Court, disagreed with the majority holding that evidence of an extrajudicial identification was hearsay, and Judge Parke dissented vigorously from the majority holding. As Judge Horney pointed out, their views are supported by Wigmore,

*Evidence* (3rd ed. 1940) § 1130, which cites with approval Judge Parke's dissenting opinion in *Blake.* See also *Lubinski v. State,* 180 Md. 1, 8-9, 22 A. 2d 455. Cf. *Murphy v. State,* 184 Md. 70, 40 A. 2d 239 (testimony of a police officer that he had stopped the defendant for illegal use of an automobile spotlight and that he then had a woman with him in his car— this testimony being corroborative of the prosecutrix' account of events of the evening or night prior to the time of her being attacked and raped by the defendant). See also an annotation on extrajudicial identifications in 70 A.L.R. 910.

We think that our view above stated is supported by *State v. Wilson,* 38 Wash. 2d 593, 231 P. 2d 288, cert. den. 343 U. S. 950, and by *Johnson v. State,* 254 Wis. 320, 36 N. W. 2d 86, each of which is similar to the instant case. In *Wilson,* in a very thorough opinion by Justice Hill, it was held that testimony by a police officer was admissible with regard to a partial, but not a positive, identification by another witness of the two defendants who had been put in police line-ups. In that case the other witness, Mrs. Nelson, had testified that she had seen two men at the time of the abduction of the kidnapped and murdered victim, but had seen them under such conditions of time and visibility as to make any description of them impossible except as to size and build. Several weeks after the crime she viewed two line-ups of six men each and testified that she picked one man from each group who came closest to the outline that she had seen at the time of the crime, and that each of them had a resemblance to one of the men she had then seen. The police chief testified that the men whom Mrs. Nelson so picked out were the defendants. This testimony was held admissible. The court pointed out that the case was not within the usual pattern of extrajudicial identification, since it served to complement, not to corroborate, the testimony of the witness, Mrs. Nelson, who had made no positive identification. The instant case does fall within the usual pattern, since the evidence is corroborative of Martin's testimony as to his tentative identification at the Casualty Hospital and of his identification in court.

In *Johnson v. State, supra,* a boy had gone to a police station for the purpose of determining whether the defendant

was the man who had taken indecent liberties with him. A police officer held the boy up so that he could look through a one-way glass window. The officer's testimony that the boy then identified the defendant by pointing to him was held not to be hearsay, but to be admissible as a statement of what the officer saw, something which the boy did in his presence.

In the note in 19 Md. L. Rev. above referred to, at pp. 218-220, the author seriously questions the propriety of admitting the testimony of one witness, as to an identification made by someone else, on the ground that this is open to all of the dangers of hearsay evidence, notably the absence of an opportunity for cross-examination. Here it is true that Martin himself did not testify to the Hyattsville identification of Proctor, but it appears that he was available as a witness and could have been recalled and questioned about it.

We turn then to the defendant's other contention—that the identification at Hyattsville was not held "under circumstances precluding suspicion of unfairness or unreliability," to use the words of *Basoff* (208 Md. at 650).

"Circumstances precluding suspicion of unfairness or unreliability" seems somewhat of an overstatement of a salutary rule as to the circumstances under which an extrajudicial identification should be made in order to render evidence thereof admissible—for any lapse of time and opportunity for discussion might serve as the basis for a suspicion of coaching. In *Judy,* after quoting the above language from *Basoff,* we said in part (218 Md. at 174): "From what we said in the *Basoff* case it is clear we now recognize that an extrajudicial identification of the accused made under proper circumstances may be admitted in evidence * * *, and, if admitted would constitute corroborative evidence." This less sweeping statement as to proper circumstances is, we believe, in accordance with the usual statement of the rule in jurisdictions admitting such evidence. See the annotation in 70 A.L.R. above cited, pp. 911-913. In this State, evidence of an identification made at a line-up was stated in the *Lubinski* case, *supra,* to be admissible, though its weight was to be determined by the trier of the facts. In that case the defendant claimed (though the State denied) that at the line-up he was virtually pointed out

to the complaining witness by the police. (180 Md. at 8-9.) This statement, we think, is in accord with the generally accepted rule. See *People v. Berne,* 384 Ill. 334, 51 N. E. 2d 578; *People v. Barry,* 371 Ill. 463, 21 N. E. 2d 561; *State v. Dutton,* 83 Ariz. 193, 318 P. 2d 667; and *Brannon v. State,* 39 Okla. Cr. 207, 264 P. 835.

In the instant case, there are no such facts as, in our judgment, would call for a finding that the identification at Hyattsville was made under conditions of unfairness or unreliability. The relatively large number of persons put into the room together for Martin to look at is one circumstance indicating fairness, and the fact that the police officer was unable to remember the appearances of the others and could not recall if they had physical characteristics similar to Proctor's or not is at least suggestive that they were not of any one type or that they all differed markedly in looks from the defendant. There is no evidence that the Police Sergeant gave the complaining witness any indication as to which of the thirteen men was the defendant; the Sergeant's testimony is simply that he asked Martin if he could identify Proctor after having put the thirteen men in the courtroom.

Applying the general rule above stated, we think that it was proper for the jury to determine what weight should be given to this evidence, but that it was admissible for consideration by the jury.

In accordance with the views above stated the judgment is affirmed.

*Judgment affirmed.*